# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### June 14, 2001 Session

## STATE OF TENNESSEE  v.  MILES MATEYKO

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Lincoln County**
**No. S9700139     Hon. Charles Lee, Judge**

---

**No. M1998-00275-SC-R11-CD - Filed August 29, 2001**

---

The defendant was charged and convicted of child abuse through neglect in violation of Tennessee Code Annotated section 39-15-401(a).  The Court of Criminal Appeals reversed the conviction, finding that the State did not establish that the defendant's children suffered any actual, deleterious effect or harm from the neglect.  However, the intermediate court found that the defendant was guilty of attempted child abuse through neglect, and it remanded the case for resentencing.  The State requested permission to appeal to this Court, and we hold that section 39-15-401(a) does require proof of an actual, deleterious effect or harm to the child's health and welfare and that the mere risk of harm is insufficient to support a conviction.  We also hold that in those cases in which no such actual, deleterious effect or harm is shown, a defendant may be convicted of attempted child abuse through neglect under Tennessee Code Annotated section 39-12-101, provided that the State is successful in making the required showing.  Because the record in this case contains conflicting evidence as to the required intent necessary for the attempted crime, we remand this case to the Lincoln County Circuit Court for a new trial on the lesser-included offense of attempted child abuse through neglect.  The judgment of the Court of Criminal Appeals is affirmed in part and reversed in part.

**Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the**
**Court of Criminal Appeals Affirmed in Part, Reversed in Part; Case Remanded**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Kim R. Helper, Assistant Attorney General, Nashville, Tennessee, for the appellant, State of Tennessee.

N. Andy Myrick, Jr., Fayetteville, Tennessee, for the appellee, Miles Mateyko.

# OPINION

## FACTUAL BACKGROUND

During the late evening of May 1, 1997, emergency medical personnel responded to a call at the home of the defendant, Miles Mateyko, whose wife was suffering from chest pains. When the medical personnel arrived, Ms. Mateyko met them in the yard, and they treated her inside the ambulance. Although the paramedics offered to take her to the hospital, Ms. Mateyko said that she felt better and would rather stay home.

One of the paramedics then helped her back to her mobile home, and upon opening the front door, he found the conditions inside to be almost indescribably filthy. Garbage and refuse were scattered throughout the home, and pungent odors of urine, old fried food, and human feces permeated every corner. The paramedic further observed a baby lying in a pile of trash and dirty clothes with only the top of its head visible, and he saw two children asleep on a couch under a roach-infested blanket.

Local police authorities were then summoned to the defendant's residence, where they also observed a pool of vomit in front of the door, filthy dishes in the kitchen, and moldy and rotten food littered throughout the trailer. The officers also found feces on the floor next to the commode in the bathroom, which was likewise exceptionally filthy. Later describing the terrible conditions in the mobile home, one officer testified that the refuse strewn about was so considerable that he could not see any part of the floor, and another officer stated that he had to go outside periodically to breathe fresh air and to shake the roaches off his pants.

The officers contacted the Department of Children's Services, who removed the defendant's three children that night and took them to their grandmother's house. Despite living in these abhorrent conditions, however, the children appeared by all accounts to be in good health, and they did not exhibit any signs of illness or other affliction, except that one child was suffering from a cold. Their grandmother later testified that when the children first arrived at her house during the early morning hours of May 2, she believed them to be well-fed and "in perfect health."

On December 16, 1997, a Lincoln County grand jury indicted the defendant on three counts of neglect of children less than six years of age in violation of Tennessee Code Annotated section 39-15-401(a). At trial, the State introduced several witnesses who described the appalling conditions of the mobile home, but it did not introduce any evidence showing that these conditions produced an adverse effect to the health of the children. In fact, while all of the State's witnesses testified that the children's health and welfare were at risk of harm, they also all agreed that the children were in good health at the time of their removal. One officer further admitted that, apart from the deplorable conditions of the mobile home, he had no reason to believe that the children were unhealthy in any

way. Nevertheless, the jury returned a guilty verdict on all three counts of child neglect,[1] and the court sentenced the defendant to serve an effective term of three years, four months in the Department of Correction.

The defendant then appealed to the Court of Criminal Appeals, arguing that because the State introduced no proof that the conditions inside the mobile home caused or produced an actual, deleterious effect upon the children's health and welfare, the evidence was insufficient to support a conviction for child neglect under section 39-15-401(a). The intermediate court agreed, and it vacated the defendant's conviction upon finding that "the record is devoid of any proof of a medical or scientific nature that these conditions in and of themselves equated to harm."

However, despite the absence of actual harm to the children, the Court of Criminal Appeals concluded that the defendant was guilty of attempted child neglect. The court stated that under Tennessee Code Annotated section 39-12-101(a)(3), a defendant could be guilty of attempted child neglect if he or she intended to complete a course of action resulting in child neglect and had taken a substantial step toward the commission of that offense. Further finding that "the jury's verdict is necessarily a finding on each count that the defendant committed acts which constitute an attempt to commit child neglect," the court remanded the case for resentencing.

We granted the State's request for permission to appeal on the issue of whether the offense of child abuse through neglect contained in Tennessee Code Annotated section 39-15-401(a) requires proof of an actual, deleterious effect upon the child's health and welfare.[2] The defendant has also raised the issue of whether the Court of Criminal Appeals correctly held that one may be lawfully convicted of attempted child neglect. For the reasons given herein, we hold that some proof of an actual, deleterious effect upon the child's health and welfare must exist before a conviction may be sustained under Tennessee Code Annotated section 39-15-401(a). We also hold that the defendant may be guilty of attempted child neglect under Tennessee Code Annotated section 39-12-101(a)(3), provided that the State proves that the defendant's conscious object or desire was to engage in

---

[1] The offense of child abuse and neglect proscribed by Tennessee Code Annotated section 39-15-401(a) is a single offense that may be committed through one of two courses of conduct: child abuse through injury and child abuse through neglect. See State v. Hodges, 7 S.W.3d 609, 622 (Tenn. Crim. App. 1998). Although the criminal code contains no specific offense labeled "child neglect," we will generally refer to the child abuse through neglect prong of section 39-15-401(a) as "child neglect" for ease of reference.

[2] Oral argument in this case was heard on June 14, 2001 in Nashville. Although Chief Justice Anderson was unavoidably absent from argument, the parties were informed in open court of his participation in the discussion and decision of this case pursuant to Rule 1(a)(ii) of the Internal Operating Procedures of the Tennessee Supreme Court:

> Absent exceptional circumstances, all members of this Court shall participate in the hearing and determination of all cases unless disqualified for conflicts. However, a hearing shall proceed as scheduled notwithstanding the unavoidable absence of one or more justices. Any justice who is unavoidably absent from the hearing may participate in the determination of the case either by teleconferencing, videoconferencing, or by reviewing the tape of oral argument, subject to the determination of the Chief Justice. Counsel shall be advised in open court that the absent justice will fully participate in the discussion and decision of the case.

conduct constituting neglect and that he took a substantial step toward the commission of the offense. Because the record contains conflicting evidence as to the defendant's intent in this regard, we remand this case to the Lincoln County Circuit Court for a new trial on the lesser-included offense of attempted child neglect.

## NECESSITY OF PROVING AN ACTUAL, DELETERIOUS EFFECT UPON A CHILD'S HEALTH AND WELFARE

Because the first issue in this case concerns the proper construction given to Tennessee Code Annotated section 39-15-401(a), we begin our analysis with a review of its text. This section provides that

> [a]ny person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or *neglects such a child so as to adversely affect the child's health and welfare* commits a Class A misdemeanor; provided, that if the abused or neglected child is six (6) years of age or less, the penalty is a Class D felony.

(emphasis added). As we have recognized before, the offense of child neglect requires proof of three material elements: (1) that a person knowingly neglected a child, (2) that the child's age is within the applicable range set forth in the statute, and (3) that the neglect adversely affected the child's health and welfare. See State v. Ducker, 27 S.W.3d 889, 896 (Tenn. 2000). However, the statute itself does not define the phrase "so as to adversely affect the child's health and welfare," nor does it specifically address whether this phrase requires proof of some actual detriment or harm before criminal liability may be imposed.

A cardinal rule of statutory construction is that statutes are construed according to the plain and ordinary meaning of their terms. See, e.g., State v. Mallard, 40 S.W.3d 473, 480 (Tenn. 2001). Accordingly, the State argues that, based on the common, ordinary meaning of the terms, the phrase "adversely affect" essentially requires only that the defendant place the child's health and welfare *at risk* of suffering some harm and that no harm needs actually to occur. Relying upon the same canon of construction, but supplying different definitions of the terms, the defendant argues that the statute requires proof of some actual harm and that a conviction cannot be sustained when nothing more than a mere risk of harm is present. As can be seen by these arguments, the parties legitimately dispute the ordinary meaning of the language used in this statute, and we should therefore look beyond the language to examine "the entire statutory scheme for interpretive guidance." McCoy v. T.T.C., Ill. Inc., 14 S.W.3d 734, 738 (Tenn. 2000); Mandela v. Campbell, 978 S.W.2d 531, 534 (Tenn. 1998).

Although this issue is one of first impression for this Court, some of our recent decisions have thoroughly examined the statutory scheme underlying section 39-15-401(a), and these decisions indicate that some actual detriment or harm is in fact required to impose criminal liability for child

neglect. For example, in State v. Ducker, we discussed the elements of this offense and concluded that

> [o]nce the knowing mens rea [for the neglect element] is established, the next inquiry under the plain language of the statute is simply whether the child sustained an injury or, *in the case of child neglect, whether the child suffered an adverse effect to the child's health [and] welfare.* The legislature has employed the phrases "so as to injure" and "so as to adversely affect" when defining the injury aspect of the child abuse statute. These phrases clearly indicate that *if an injury results from knowing abuse or neglect*, the actor has committed child abuse.

27 S.W.3d at 897 (emphasis added). As is evident from this discussion, the State must prove, as an essential element of the offense, that the child "suffered" some adverse effect to his or her health and welfare. Our use of the terms "suffer" and "injury" in the neglect context was not unintentional, and these terms serve to indicate that the showing of harm in the neglect context is not materially different in kind than the showing required in the abuse context. Just as the statute does not contemplate that a mere risk of injury is sufficient in the abuse context, Ducker makes clear that a mere risk of harm in the neglect context is also insufficient.

In addition, our decision in State v. Adams, 24 S.W.3d 289 (Tenn. 2000), a case decided less than two weeks before Ducker, further indicates that an actual, deleterious effect or harm to the child must be shown under section 39-15-401(a). In Adams, we held that child neglect is a continuing offense and that, therefore, the State does not need to make an election of offenses when it shows that several adverse effects have resulted from one period of neglect. In addressing the nature of child neglect itself, we concluded that the offense of child abuse through neglect continues "until the person responsible for the neglect takes reasonable steps *to remedy the adverse effects* to the child's health and welfare caused by the neglect." Id. (emphasis added and citation omitted). Again, our use of the phrase "to remedy the adverse effects" strongly suggests that something more than a mere risk of harm needs to be present. After all, if no actual harm or detriment to a child's health and welfare is present to be remedied, then simple logic dictates that the offense itself cannot exist.[3]

Most importantly, though, the State's argument that a mere risk of harm is sufficient for criminal liability improperly renders the "adverse effects" element of the offense without meaning.

---

[3] The State also cites our decision in Adams in support of its argument that the statute only requires a risk of harm, and quoting language from that opinion, the State maintains that a child continues to be in a state of neglect "'so long as the morals or health of the child is endangered.'" Consequently, the State concludes, the statute only requires that the child's health and welfare be endangered, not that actual harm occurred.

We believe that the State has misread our decision in Adams. That portion of the opinion quoted by the State was narrowly focused upon defining only the neglect element of the crime, and as we clearly stated later in that opinion, "the General Assembly intended for the offense of aggravated child abuse through neglect to punish a continuing course of knowing conduct beginning with the first act or omission *that causes adverse effects* to a child's health or welfare." Id. at 296 (emphasis added). In no place did we contemplate that a mere risk of harm would suffice to establish criminal liability under the statute.

As we acknowledged in Adams with our discussion of the statute's "neglect" element, a child is neglected whenever the breach of a legal duty endangers the health or welfare of that child or otherwise places the child's health or welfare at some risk of harm. See 24 S.W.3d at 295-96 (citing Tenn. Code Ann. §§ 37-1-102(b)(12)(F), 71-6-102(1)). It is clear, therefore, that the risk of harm to a child's health and welfare contemplated by the State is already present in the statute as evidenced by its "neglect" element.

However, were we to adopt the State's position that the "adverse effects" element of the statute also contemplates a risk of harm, the showing required for each element of the offense would be virtually identical, and we simply find no indication that the legislature intended a tautological interpretation of this statute such that satisfaction of one element effectively satisfies the other as well. Therefore, by further including the "adverse effects" element in the statute, the General Assembly must have intended that the State show something more than a risk of harm to a child's health and welfare before it could subject a defendant to criminal liability under section 39-15-401(a). See, e.g., State v. Turner, 913 S.W.2d 158, 160 (Tenn. 1995) (stating that statutes should be construed to avoid rendering some parts inoperative, void, or without effect). Accordingly, we hold that before a conviction for child neglect may be sustained, the State must show that the defendant's neglect produced an actual, deleterious effect or harm upon the child's health and welfare.

Reviewing the record in this case, we find no evidence that the children suffered any actual, deleterious effect or harm to their physical or mental health in any way. The State's witnesses all admitted that the children appeared physically healthy at the time of their removal—except that one child was suffering from a cold—and that none of the children possessed any other signs of injury or harm. Admittedly, these vile conditions did produce a risk of harm to the children's health, but fortunately for these children, they were removed from that filthy environment before any harm actually occurred. Therefore, because the statute contemplates something more than the risk of harm already inherent in its neglect element, we must affirm the judgment of the Court of Criminal Appeals that the evidence is insufficient to support the defendant's conviction under Tennessee Code Annotated section 39-15-401(a).

## THE OFFENSE OF ATTEMPTED CHILD ABUSE THROUGH NEGLECT

Although the proof in this case is insufficient to sustain the defendant's conviction for child neglect, we must address whether he may be guilty of attempted child neglect. The Court of Criminal Appeals in this case held that the defendant could be guilty of attempted child neglect under Tennessee Code Annotated section 39-12-101 and that the jury's verdict was "necessarily a finding on each count that the defendant committed acts which constitute an attempt to commit child neglect." Raising the issue before this Court, the defendant argues that attempted child neglect is a logical and legal impossibility. He asserts that because child neglect is essentially a failure to perform one's duty to care for his or her children, a court cannot logically hold that a defendant may attempt to fail to perform that duty. We believe that the defendant has misconstrued the nature of

attempt offenses in this state and that he may indeed be convicted of the offense of attempted child abuse through neglect under the conditions set forth herein.

As part of the 1989 Criminal Code Revision, the General Assembly enacted Tennessee Code Annotated section 39-12-101 setting forth the elements of criminal attempt. This new attempt statute abandoned the prior practice of listing attempt offenses individually, see Tenn. Code Ann. §§ 39-1-501 to -507 (1982 & Supp. 1988), and in relevant part, it reads as follows:

>    (a)      A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
>    (1)      Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
>
>    (2)      Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part;  or
>
>    (3)      Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
>
>    (b)      Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

See Tenn. Code Ann. § 39-12-101 (1997). As the Sentencing Commission comments to this statute express the general philosophy supporting attempt offenses, "Criminal attempt is an offense directed at the individual whose intent is to commit an offense, but whose actions, while strongly corroborative of criminal intent, fail to achieve the criminal objective intended." Acknowledging these principles, the Court of Criminal Appeals in this case found that the defendant was guilty of criminal attempt under subsection (a)(3), which requires that a defendant possess the intent to complete a course of action or cause a result, but whose conduct "is incomplete in the sense that it is cut short at some point in time before accomplishment of the intended criminal objective." Tenn. Code Ann. § 39-12-101 Sentencing Commission comments.

We have previously held that the offense of child abuse through neglect is a nature-of-conduct offense, meaning that the offense seeks principally to proscribe the nature of the defendant's conduct, as opposed to the result that the defendant's conduct achieves. See Ducker, 27 S.W.3d at 896-97. Consequently, reading section 39-12-101(a)(3) in terms of its nature-of-conduct element, the statute requires that the State prove (1) that the defendant intended to complete a course of action

that would constitute the offense, under the circumstances as the defendant believed them to be at the time; (2) that the defendant's actions constituted a substantial step toward the commission of offense; and (3) that the defendant acted "with the kind of culpability otherwise required for the offense" with respect to the other elements of the attempted crime. See also *Tenn. Pattern Instructions - Criminal* § 4.01 (5th ed. 2000). Stated more specifically in terms of this case, the attempt statute would hold the defendant criminally liable for attempted child neglect if the State were to prove the following essential elements: (1) that the defendant's conscious object or desire was to engage in conduct constituting child neglect, see Tenn. Code Ann. § 39-11-302(a); (2) that the defendant took a substantial step toward the commission of that offense; and (3) that the ages of his children were six years or less.

When viewed in terms of the statute, therefore, we cannot accept the defendant's argument that the offense of attempted child neglect is a logical or legal impossibility. Although the defendant is correct that one cannot attempt to fail to perform a duty, this is simply not the focus of the inquiry. Rather than imposing liability for trying to fail in a duty, attempt liability presumes that the defendant *actually failed* in performing a legal duty and that this failure was intentional. In other words, the issue is not whether the defendant attempted to fail in performing a duty imposed by law; it is whether his actual failure to perform that duty was intentional. Subsection (a)(3) of the statute is quite clear that a defendant whose conscious objective or desire is to engage in conduct constituting child neglect may be criminally liable for attempted child neglect if the child suffers no actual, deleterious effect to its health and welfare.

The State disagrees that the defendant must have had an "intent" to engage in conduct to be criminally liable for attempted child neglect, and it argues instead that the defendant needs only to "knowingly" engage in a course of neglect to be liable under the statute. It cites the first sentence of subsection (a)—"A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense"—and maintains that because child neglect only requires a "knowing" mental state, it follows that the attempt statute can only require a "knowing" course of conduct as well. Essentially, therefore, the State argues that the only *mens rea* required under section 39-12-101 is that otherwise required by the completed offense. We disagree.

An examination of the cases discussing section 39-12-101 reveals some confusion as to how one may simultaneously apply the mental state "otherwise required for the offense" and the mental state specifically required by subsection (a)(3), which is that the defendant act "with intent" to complete a course of action that would constitute the offense. Because of the statute's inartful language regarding the precise mental state required for any particular attempted offense, most cases have focused their analysis upon only one of these mental states to the exclusion of the other.[4]

---

[4] Although various types of analysis under section 39-12-101 can be found in the case law, courts generally follow one of three approaches. First, and most often, courts tend to overlook the specific intent portion of (a)(3) and focus instead only upon the *mens rea* accompanying the underlying offense. Dicta from our decisions in State v. Denton, 938 S.W.2d 373, 382 (Tenn. 1996), and Wyatt v. State, 24 S.W.3d 319, 323 (Tenn. 2000), may be cited as examples of this type of analysis. To be sure, however, the specific intent portion of subsection (a)(3) is an essential element of

(continued...)

Following the approach of most of these decisions, the State's argument in this case disregards the specific intent language of subsection (a)(3), and its interpretation renders that additional requirement without any consequential meaning or effect. On the other hand, if some specific intent to engage in conduct or to cause a result is in fact required for attempted crimes, then our current case law seems to give little effect to the "culpability otherwise required for the offense" when the completed offense does not require proof of an intentional mental state. Therefore, while the issue of the proper mental state to be applied in attempted crimes appears somewhat abstract upon first consideration, as a practical matter, its proper resolution is critical in this case to determine the scope of the defendant's liability for attempted child neglect.

As we stated earlier, this Court seeks to give effect to statutes as a whole, and we will avoid constructions that render some parts of a statute void, inoperative, or without effect. See, e.g., Turner, 913 S.W.2d at 160. Although section 39-12-101 seems to possess contradictory requirements as to the precise mental state needed for the offense of criminal attempt, a brief examination of similar criminal attempt statutes reveals that both mental states can be applied without conflict. As we noted in State v. Reeves, 916 S.W.2d 909, 913 (Tenn. 1996), section 39-12-101 was substantially derived from section 5.01 of the Model Penal Code (MPC), which also contains the requirement that the State prove two separate mental states: (1) that the defendant acted with the "kind of culpability otherwise required for the offense," and (2) that the defendant also acted "purposefully" in attempting to commit the crime. As is the case with our statute, in those instances

---

[4] (...continued)

any criminal attempt according to the plain language of the statute, and this language cannot be merely surplusage as the State would have us declare. Indeed, virtually all of the cases cited for our statement in Wyatt recognize that some specific intent to engage in conduct or to accomplish a result is generally required for attempt crimes, and those cases cited in Wyatt that do not require a specific intent are interpretations of statutes that are materially different than our own in this respect.

Second, courts in some cases have chosen to focus only upon the specific intent required by subsection (a)(3) without analyzing the import of the mental state otherwise required for the offense. For example, in State v. Kimbrough, 924 S.W.2d 888 (Tenn. 1996), we first highlighted the specific intent portions of the criminal attempt statute and then stated that

> "[a]n attempt, by nature, is a failure to accomplish what one intended to do. Attempt means to try; it means an effort to bring about a desired result." The concept of attempt seems necessarily to involve the notion of an intended consequence, for when one attempts to do something one is endeavoring or trying to do it. Hence, an attempt requires a desired, or at least an intended, consequence. The nature of an attempt, then, is that it requires a specific intent.

Id. at 890 (citations omitted). Essentially concluding that one could not intend an unintended consequence, we held that one could not specifically intend to commit attempted reckless felony murder. Id. at 891-92. We did not address, however, whether the reckless mental state of that offense could have any other application in the attempted crime.

Finally, some courts have attempted to equate knowledge of one's actions with an intent to engage in those actions. The Court of Criminal Appeals has recently used this rationale in State v. Palmer, 10 S.W.3d 638, 644 (Tenn. Crim. App. 1999), when it stated that mere knowledge would suffice for the specific intent language of subsection (a)(3): "unlike a mens rea of recklessness, the mental states of intentional or knowing both 'involve a level of conscious awareness and volitional, affirmative conduct.'" (citations omitted). Importantly, though, this approach, without more, leaves one unsatisfied because it ignores the critical fact that the criminal code does not equate mere knowledge or awareness of one's actions with one's intent or conscious objective to engage in those actions. Compare Tenn. Code Ann. § 39-11-302(a), with Tenn. Code Ann. § 39-11-302(b).

where the mental state "otherwise required for the offense" is less than intentional or purposeful, it initially appears that the MPC requires proof of two differing, and two very conflicting, mental states.

However, once it is understood that no single mental state applies to all of the elements of the attempted crime, it is immediately apparent that no actual conflict exists. As the comments to MPC section 5.01 demonstrate, the State's burden of proving a specific intent is limited only to showing that the defendant intended to engage in certain conduct or to cause a particular result. However, with respect to those elements not involving the nature or the result of the defendant's conduct, the State need only prove that the defendant acted with the mental state "otherwise required for the offense." In the language of the MPC Comments,

> [t]he requirement of purpose [or intent] extends to the conduct of the actor and to the results that his conduct causes, but his purpose need not encompass all of the circumstances included in the formal definition of the substantive offense. *As to them, it is sufficient that he acts with the culpability that is required for commission of the completed crime.*
> . . . .
>
> The judgment is thus that if the defendant manifests a purpose to engage in the type of conduct or to cause the type of result that is forbidden by the criminal law, he has sufficiently exhibited his dangerousness to justify the imposition of criminal sanction, *so long as he otherwise acts with the kind of culpability that is sufficient for the completed offense.* The objective is to select out those elements of the completed crime that, if the defendant desires to bring them about, indicate with clarity that he poses the type of danger to society that the substantive offense is designed to prevent.

American Law Institute, *Model Penal Code and Commentaries*, Comment to § 5.01(1), at 301-03 (1985) (emphasis added).[5] Indeed, this conclusion—that the language "kind of culpability otherwise required for the offense" pertains only to those elements not involving the nature or the result of the defendant's conduct—has also been followed by at least two other states with statutes similar to ours. See State v. Nunez, 769 P.2d 1040, 1042 (Ariz. Ct. App. 1989); State v. Vigil, 842 P.2d 843, 845-47 (Utah 1992). Therefore, in view of these authorities, we cannot accept the State's position that a "knowing" mental state is the only *mens rea* required in this case for attempt liability under section 39-12-101. In fact, as we demonstrate below, the "knowing" *mens rea* otherwise required for the offense of child neglect effectively has no application in the attempted crime at all.

---

[5] Footnote 9 of the MPC Commentaries in this section cite the following examples of attendant circumstance elements: "The elements of 'nighttime' in burglary, 'property of another' in theft, 'female not his wife' in rape, and 'dwelling' in arson." By way of contrast, the MPC distinguishes conduct elements in these same examples as follows: "'Conduct' refers to 'breaking and entering' in burglary, 'taking' in theft, 'sexual intercourse' in rape[,] and 'burning' in arson."

For ease and clarity of analysis, we address the State's burden as to the defendant's mental state in terms of each element of the attempted crime. First, with respect to the "neglect" element of section 39-15-401(a), the attempt statute clearly requires the State to show that the defendant acted "with intent" to complete a course of conduct constituting the offense. Therefore, as required by the plain language of the statute, the State must prove that the defendant intentionally engaged in conduct constituting child neglect or that his conscious objective or desire was to neglect his children. See Tenn. Code Ann. § 39-11-302(a).

Second, with respect to the "adverse effects" element of section 39-15-401(a), we conclude that the attempt statue does not require the State to show any particular mental state. Importantly, subsection (a)(3) does not require that the State prove a specific intent with respect to *both* the defendant's conduct and its result. Because the specific intent requirement of subsection (a)(3) is addressed in the disjunctive, the specific intent "to cause a result" apparently has no particular application in cases where the attempted crime is principally a nature-of-conduct offense. We have previously held that the offense of child abuse through neglect is principally a nature-of-conduct offense, Ducker, 27 S.W.3d at 896-97, and as such, the focus of the specific intent requirement of subsection (a)(3) is more properly placed upon the intent to engage in conduct, rather than upon that to cause a result.[6] Consequently, we conclude that the State has no burden under section 39-12-101(a)(3) to show that the defendant intended that his children suffer adverse effects to their health and welfare.

Therefore, because no specific intent is required by the attempt statute for the "adverse effects" element of section 39-15-401(a), the mental state required for this element is that "otherwise required" by the offense. We held in Ducker that child neglect requires no specific *mens rea* for its result element, and as such, a defendant may be held criminally liable despite his or her ignorance that the neglect produced any adverse effects to the child's health and welfare. See 27 S.W.3d at 897. Accordingly, because no mental state is "otherwise required" by the completed offense for this element, the State is not required to establish, for the attempted crime, that the defendant acted with

_____

[6] We do not mean to suggest that in those cases where the attempt statute requires the defendant to act "with intent" to cause a result, the State must prove that the defendant's *conscious objective or desire* was for the result to occur. Rather, as the MPC Comments make clear, the State needs only to show that the defendant *believed* that the result would follow from the conduct. See *Model Penal Code and Commentaries* at 304-05. As one federal court citing the MPC Comments has stated with regard to result-of-conduct offenses, "Under the Code, the defendant must either affirmatively desire to cause the result that will constitute the principal offense or *believe* that the result will occur (whether or not he affirmatively *desires* the result to occur)." United States v. Padilla, 771 F. Supp. 35, 39 n.7 (E.D.N.Y. 1991) (emphasis in original).

In this manner, result-of-conduct offenses otherwise requiring a non-intentional mental state may be attempted even if the defendant did not consciously desire for the proscribed result to occur. Taking second degree murder as one such example, it is clear that the defendant does not have to "intend" that death occur, at least not in the sense that the victim's death is the defendant's conscious objective or desire. Instead, so long as the State shows that the defendant *believed* that death would follow from his or her conduct, criminal attempt liability may be imposed. Although cases in this state dealing with attempted second degree murder have not relied upon this precise method of analysis, they have nevertheless reached a result compatible with the analysis set forth under the MPC. Cf. Palmer, 10 S.W.3d at 644.

any intent to cause an actual, deleterious effect or harm. <u>Cf.</u> *Model Penal Code and Commentaries* at 302 (noting same).

Finally, the age element in section 39-15-401(a) is properly classified as an attendant circumstance element, and as such, the criminal attempt statute likewise only requires that the defendant act with the "kind of culpability otherwise required for the offense." Because section 39-15-401(a) requires no specific mental state regarding the age of the children in child abuse or child neglect cases, <u>see</u> <u>Ducker</u>, 27 S.W.3d at 899 (discussing a proper jury instruction on this element without reference to mental state), no culpability is "otherwise required" by the attempt statute either. Therefore, the attempt statute places no requirement upon the State to show that the defendant was aware of the ages of his children before criminal attempt liability may be imposed.

In summary, therefore, we hold that the defendant may be criminally liable for attempted child neglect under Tennessee Code Annotated section 39-12-101(a)(3), so long as the State proves (1) that the defendant's conscious object or desire was to engage in conduct constituting child neglect; (2) that he took a substantial step toward the commission of that offense; and (3) that his children were of six years of age or less. We note that even were we to agree that the State's position represents the more appropriate view regarding the scope and extent of criminal attempt liability, this Court "does not typically function as a forum for resolution of public policy issues when interpreting statutes." <u>Lavin v. Jordon</u>, 16 S.W.3d 362, 369 (Tenn. 2000). Consequently, we are bound by the law as it is, not as we would have it be, and to that end, we are not free to adopt constructions that are plainly contrary to the language of the statute.

With regard to the proof establishing the attempted offense in this case, we agree with the Court of Criminal Appeals that some evidence exists in the record that, especially if viewed in a light most favorable to the State, tends to establish the crime of attempted child neglect under section 39-12-101(a)(3). Specifically, we agree with the intermediate court that the jury's finding of knowing neglect indicates that it found the presence of the second and third elements needed to establish criminal attempt liability in this case. However, we disagree with the Court of Criminal Appeals that the jury's finding of knowing neglect necessarily establishes that the defendant's *conscious object or desire* was to engage in conduct constituting child neglect. Although the record contains some evidence from which a reasonable jury could conclude that the defendant's conscious desire or object was to neglect his children, other evidence admittedly weighs against this finding. Because the jury in this case did not reach a verdict as to the attempted offense, and because it is not the function of an appellate court to resolve conflicts in the evidence with regard to the defendant's intent to commit an offense, we conclude that the most appropriate course of action is to remand this case to the Lincoln County Circuit Court for a new trial on the lesser-included offense of attempted child abuse through neglect.

### CONCLUSION

We hold that because the State introduced no proof that the defendant's neglect produced an actual, deleterious effect upon the health and welfare of his children, the evidence is insufficient to

sustain the defendant's conviction for child neglect under Tennessee Code Annotated section 39-15-401(a). We also hold that the defendant may be guilty of attempted child neglect under Tennessee Code Annotated section 39-12-101(a)(3), provided that the State proves that the defendant's conscious object or desire was to engage in conduct constituting neglect; that he took a substantial step toward the commission of that offense; and that the ages of his children were six years or less. Because the record contains conflicting evidence as to the defendant's intent in this regard, we remand this case to the Lincoln County Circuit Court for a new trial on the lesser-included offense of attempted child abuse through neglect. The judgment of the Court of Criminal Appeals is affirmed in part and reversed in part.

Costs of this appeal are assessed to the State of Tennessee.

 

 

 

_____

WILLIAM M. BARKER, JUSTICE