# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs June 29, 2010 at Knoxville

## STATE OF TENNESSEE v. CHRISTOPHER COLLINS

**Appeal from the Circuit Court for Lawrence County**
**No. 26947    Robert L. Jones, Judge**

---

**No. M2009-01674-CCA-R3-CD - Filed February 4, 2011**

---

The Defendant, Christopher Collins, was indicted by the Lawrence County grand jury on three counts of felony child neglect, a Class E felony. The Defendant waived his right to trial by a jury and was convicted by the trial court of two counts of felony child neglect and one count of misdemeanor child neglect. The Defendant received concurrent sentences of 18 months in the Tennessee Department of Correction for the felony convictions and a concurrent sentence of 11 months and 29 days in the county jail for the misdemeanor conviction. In this appeal as of right, the Defendant contends that the evidence was insufficient to sustain his convictions and that in the alternative, he should have been convicted of attempted child neglect. Following our review, we conclude that there was insufficient evidence to sustain the Defendant's convictions. As there was sufficient evidence to sustain a conviction of attempted child neglect, we reverse and vacate the Defendant's convictions of felony and misdemeanor child neglect and impose two convictions of attempted felony child neglect, a Class A misdemeanor, and one conviction of attempted child neglect, a Class B misdemeanor. The case is remanded for a new sentencing hearing.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court are Reversed; Case Remanded.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Ronald G. Freemon, Columbia, Tennessee, attorney for appellant, Christopher Collins.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Mike Bottoms, District Attorney General; and James G. White, II and Kyle Dodd, Assistant District Attorneys General, attorneys for appellee, State of Tennessee.

# OPINION

Officer Marion Yokley of the Tennessee Highway Patrol testified at trial that on July 20, 2007, she saw a sign in the Defendant's yard indicating that the Defendant had pit bull puppies for sale and that she went to the Defendant's house in hopes of finding her stolen pit bull puppy. When she knocked on the door, the Defendant's three daughters came to the door. The girls were naked. The girls appeared to be alone in the house, and when asked about their parents, the girls told Officer Yokley that their mother would be back "in a little while." Approximately ten minutes later, Ashley Collins arrived and invited Officer Yokley into the living room. Officer Yokley was unable to see past the living room because "[t]here were curtains across each doorway inside the house." As Officer Yokley was looking at the puppies, Ashley Collins told the girls to get dressed. One of the girls left and came back clothed in a dress. When Officer Yokley was leaving, she noticed that Ashley Collins went to the neighbor's house, which shared a driveway with the Defendant's house, and left the girls alone again. Officer Yokley tried to contact the Department of Children's Services (DCS) but was unable to speak with anyone; therefore, she contacted the sheriff's department.

Dawn Bradley, a DCS child protective experience investigator, testified at trial that she received a report regarding the Defendant's children on July 20, 2007. On that same day, Investigator Bradley went with Investigator Melinda Brewer of the Lawrence County Sheriff's office to the Defendant's residence. When they arrived, Ashley Collins and the Defendant were not present. The Defendant's neighbor told the investigators that Ashley Collins was on her way home and would be back soon. The Defendant, followed by the Tennessee Highway Patrol, arrived at the residence before Ashley Collins returned with the children. The Tennessee Highway Patrol had attempted to stop the Defendant for speeding. Once at the residence, the Defendant abruptly stopped his vehicle, almost hitting the police cars in the driveway.

The Defendant allowed the investigators to come inside the house and walk around his property. Pictures of the Defendant's residence were introduced to the court. The house had two bedrooms, one bathroom, a living room, a kitchen, and a small room that contained a washer and dryer. The front bedroom, the Defendant's bedroom, contained a mattress, a television, an X-Box gaming system, and "[w]hat was believed to be marijuana residue."[1] The second bedroom, the girls' bedroom, had a "blow-up air mattress and a smaller mattress." Both mattresses were on the floor, and there were dirty sheets on the mattresses and on the floor near the mattresses. There were several pit bull puppies in the second bedroom sleeping on the air mattress.

---

[1]Testimony at trial indicated that this residue was never tested.

The investigators could not find any hygiene products in the bathroom, and the bathroom floor was dirty. The laundry room was "overwhelmed with piles of clothes." The kitchen was generally "filthy" with dirty dishes in the sink and clutter on the counters and stove. The stove itself was "filthy," and the cabinets and the refrigerator contained "little to no food." The trash can in the kitchen had been turned over, and there was trash and dog food on the floor. There was also a window box fan in the kitchen that appeared to be broken. The sides of the fan had been removed, leaving the fan exposed.

The grass on the Defendant's property had not been maintained properly. Additionally, there was another mattress outside the house on the ground, a poorly maintained sofa and a chair on the porch, a small swimming pool filled with stagnant water outside in the front yard, and a broken and falling swing set in the backyard. The investigators also photographed the inside of the trunk of Ashley Collins's vehicle, which contained clothing, diapers, and bread.

Investigator Bradley stated that the children had cuts and scrape marks. The children did not have any shoes on their feet, and one of the children indicated that she had shoes but that her sisters did not have shoes. Additionally, the children did not have on any underwear or Pull-Ups. When the investigators asked the parents for more clothing, Ashley Collins retrieved clothing from the trunk of her car. Ashley Collins told the investigators that the clothes were in the trunk because she was planning to leave the Defendant and had been staying somewhere else with the girls. The children told the investigators that the only food they ate that day was a "baloney" sandwich and a popsicle. The investigators later determined that the children had a severe case of head lice. In order to get rid of the lice, the investigators had to cut the children's hair "very short."

Investigator Brewer testified that the children had a "very foul odor about themselves." She stated that "[t]heir hair was so full of lice that you could watch their hair move." The children's toenails and fingernails were unkempt, and one of the children stated that she did not even own a toothbrush. Investigators found a cigarette burn on the right upper thigh of the smallest child. The oldest child told Investigator Brewer that her mother had burned her sister but did not state whether her mother burned her sister intentionally or accidentally.

Grace Ellen Collins, the Defendant's mother, testified on the Defendant's behalf. Grace Collins stated that the Defendant's house was not perfectly clean but that the house was "never nasty." She stated that she never had concerns about the children's safety and that there was always food at the house. She also stated that Ashley Collins had left the Defendant on a number of occasions and that on this particular occasion, Ashley Collins was going to visit her family.

The Defendant testified that he and Ashley Collins had been arguing and that she left with the children. He said that he was not sure where Ashley Collins and his children were staying because "he [does not] always get into her personal life." He stated that she brought the children to the house in the morning and that he spent approximately 10 to 15 minutes with them before leaving for work. He thought that she was going to pack up the rest of her belongings while he was at work and meet him after work to get some money from him. He did not know why the children would have been left alone at his house.

He stated that all of the puppies did not sleep with the children but that he allowed them to pick one puppy to sleep with at night. Relative to the cleanliness of the house, the Defendant stated that the pictures did not reflect the general condition of his residence on a regular basis because "[o]ne of [his] pet peeves was a clean house." He admitted that he did not have much food in the house for the children but stated that he usually shopped for food on Friday when he received his paycheck. He stated that he did not allow the children to play in the house or outside without any clothing on but stated that one of the girls would take her clothes off if she wet herself. He also stated that there were hygiene products in the house.

At the conclusion of the proof and argument, the trial court stated, "The [c]ourt cannot find, beyond all reasonable doubt, or by a preponderance of the evidence, that the father knowingly left the . . . children without adult supervision." In finding that the Defendant was guilty of child neglect, the trial court stated, "[I]t's a borderline case, but still, the [ac]cumulation of all of it together shows, beyond a reasonable doubt, that he fail[ed] to maintain a clean and adequate home for the welfare of his children, and that that failure amounted to neglect, under the statute."

## ANALYSIS

The Defendant contends that the evidence was insufficient to sustain his convictions when the State failed to prove that the Defendant knowingly neglected his children and that the children's health and welfare were adversely affected by the neglect. The Defendant contends, in the alternative, that the trial court should have found that the evidence was only sufficient to sustain a conviction of attempted child neglect. The State responds that the evidence was sufficient to sustain the Defendant's convictions when the conditions in the home were deplorable and when the children's hair had to be cut off because of a severe case of head lice.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The

-4-

appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

According to the statute in effect at the time of the offenses, a person "who knowingly abuses or neglects a child under eighteen (18) years of age, so as to adversely affect the child's health and welfare, commits a Class A misdemeanor." Tenn. Code Ann. § 39-15-401(b) (2006). "[I]f the abused or neglected child is six (6) years of age or less, the penalty is a Class E felony." Tenn. Code Ann. § 39-15-401(b). In order to convict the defendant of child neglect, "the State [must] show something more than a risk of harm to a child's health and welfare." State v. Mateyko, 53 S.W.3d 666, 671 (Tenn. 2001). "[T]he State must show that the defendant's neglect produced an actual, deleterious effect or harm upon the child's health and welfare." Id. at 671-72.

In Mateyko, the supreme court concluded that the children had suffered no harm even though a baby was found in a pile of trash and dirty clothes and other children were sleeping under a "roach-infested blanket." Id. at 668. The testimony reflected that the house was in such a deplorable condition that the officers could not see any part of the floor and that one officer had to go outside "to breathe fresh air and to shake the roaches off his pants." Id. In concluding that the evidence was insufficient to sustain a conviction of child neglect, the supreme court stated that "the State introduced no proof that the defendant's neglect produced an actual, deleterious effect upon the health and welfare of his children." Id. at 678.

In this case, the testimony reflected that the children had some cuts and scrapes and that one child had a burn mark on her leg. The burn mark was attributed to the mother's negligence or intentional infliction of harm. No evidence was presented regarding the cause or severity of the cuts and scrapes. While the children had a severe case of head lice, there was no testimony that the children suffered any physical harm from the lice. See State v. Tiffany Goodman, No. M2001-02880-CCA-R3-CD, 2003 WL 1715997, at *12-13 (Tenn. Crim. App. April 1, 2003) (describing cases of neglect where the defendant failed to seek

-5-

medical attention, causing harm to the child), perm. app. denied (Tenn. Oct. 13, 2003). Moreover, the State did not prove that the Defendant's neglect of the general housekeeping duties and the children's hygiene caused an "actual, deleterious effect or harm upon the [children's] health and welfare." Mateyko, 53 S.W.3d at 168. Accordingly, we reverse and vacate the Defendant's convictions of felony child neglect and misdemeanor child neglect.

However, we conclude that the evidence was sufficient to sustain convictions of the lesser-included offense of attempted child neglect. In Mateyko, the Tennessee Supreme Court examined the elements of the offense of attempted child neglect. The supreme court held that first, "the State must prove that the defendant intentionally engaged in conduct constituting child neglect or that his conscious objective or desire was to neglect his children." Id. 53 S.W.3d at 676 (citing Tenn. Code Ann. § 39-11-302(a)). The State must also prove "that the defendant took a substantial step toward the commission of that offense." Id. at 673. Because "the offense of child abuse through neglect is principally a nature-of-conduct offense . . . the State has no burden . . . to show that the defendant intended that his children suffer adverse effects to their health and welfare." Id. at 676-77.

In Mateyko, the supreme court remanded the case for a new trial after concluding that there was evidence that could support a conviction of attempted child neglect. The court stated that because the evidence was conflicting, the case should be remanded. Id. at 678-79. However, we believe that remand is unnecessary in this case because the trial court made specific findings that can be considered when determining whether the evidence is sufficient to sustain a conviction of attempted child neglect. The trial court stated that the "dirty condition of the house and the children were at least there before [the Defendant] left for work that morning" before specifically finding that the Defendant failed to "maintain a clean and adequate home for the welfare of the his children." The trial court found that contrary to the Defendant's assertion, the children were staying at the Defendant's house. The evidence presented at trial illustrated a sustained attempt by the Defendant to neglect his children by failing to provide a safe, sanitary, and adequate living environment for them and by failing to provide for the children's personal hygiene and medical needs. The conditions of the house were deplorable, and had there been any evidence of injury to the children, the Defendant's convictions would have been upheld. We conclude that the Defendant's "conscious objective or desire was to neglect" his children and that he took a substantial step toward achieving his objective. Id. at 676. Accordingly, we impose two convictions of attempted felony child neglect, a Class A misdemeanor, and one conviction of attempted child neglect, a Class B misdemeanor. We remand the Defendant's case for a new sentencing hearing.

## CONCLUSION

In consideration of the foregoing and the record as a whole, we vacate the judgments of the trial court and impose two convictions of attempted felony child neglect and one conviction of attempted child neglect.  The case is remanded for a new sentencing hearing.


_____
D. KELLY THOMAS, JR., JUDGE