IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 25, 2011

## STATE OF TENNESSEE v. WANDA ELAINE BROCK

**Appeal from the Criminal Court for Sullivan County**
**No. S54,966     Robert H. Montgomery, Judge**

**No. E2009-00785-CCA-R3-CD - Filed March 16, 2011**

The defendant, Wanda Elaine Brock, appeals her Sullivan County jury convictions of two counts of aggravated child abuse of a child less than eight years of age and two counts of aggravated child neglect of a child less than eight years of age, Class A felonies. At sentencing, the trial court merged the convictions into one count of aggravated child abuse and imposed a Range I sentence of 20 years to be served at 100 percent by operation of law. *See* T.C.A. § 40350501(i)(1), (2)(k). On appeal, the defendant challenges (1) the sufficiency of the convicting evidence, (2) the trial court's exclusion of extrinsic evidence concerning an inconsistent statement made by the victim, (3) the length of the sentence imposed, and (4) the trial court's denial of her petition for a writ of error coram nobis. On appeal, we conclude that the evidence is insufficient to support the defendant's convictions of aggravated child neglect. In consequence, with respect to counts three and four, the judgments of conviction are reversed, the verdicts are vacated, and the charges are dismissed. We further conclude, that the trial court erred by excluding extrinsic evidence of the victim's prior inconsistent statement. Accordingly, we reverse the judgments of conviction in counts one and two and remand those counts for a new trial. Concerning the trial court's denial of coram nobis relief, we conclude that the trial court did not abuse its discretion by denying the petition for a writ of error coram nobis and affirm the trial court's order with respect to the coram nobis petition. In summary, the judgments of the trial court in counts three and four are reversed, and the charges are dismissed; the judgments of the trial court in counts one and two are reversed, and the case is remanded for a new trial on those counts; and the order of the trial court denying coram nobis relief is affirmed.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed in Part; Reversed and Dismissed in Part; Reversed and Remanded in Part.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Steve McEwen, Mountain City, Tennessee (on appeal); and William A. Kennedy, Assistant District Public Defender (at trial), for the appellant, Wanda Elaine Brock.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; H. Greeley Welles, Jr., District Attorney General; and Amber Massengill, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Sullivan County grand jury charged the defendant with one count of aggravated child abuse causing serious bodily injury, *see* T.C.A. § 39-15-402(a)(1) (2006), one count of aggravated child abuse committed by the use of a deadly weapon, *see id*. § 39-15-402(a)(3), one count of aggravated child neglect causing serious bodily injury, *see id*. § 39-15-402(a)(1), and one count of aggravated child neglect committed by the use of a deadly weapon, *see id*. § 39-15-402(a)(3). The counts all involved the single allegation that the defendant burned the palm of her eight-year-old daughter, E.B., with a cigarette.[1]

On Monday, December 3, 2007, Sullivan Elementary School special education teacher Deana Bishop discovered a circular dime-sized wound on E.B.'s left hand. E.B. was one of Ms. Bishop's students who, in addition to requiring special education instruction due to her "very delayed" development, had undergone surgery for a cleft pallet resulting in a "very severe speech impediment." Ms. Bishop contacted the school's guidance counselor concerning the wound, who in turn contacted the Department of Children's Services (DCS). A DCS investigator came to the school the next day to investigate the victim's injury.

Detective Bobby Russell, a child abuse investigator with the Sullivan County Sheriff's Office, accompanied DCS investigator Teresa Brooks to Sullivan Elementary School on December 4 to interview the victim and her siblings concerning the victim's injury. They also went to the nearby middle school to talk to the victim's older sister, V.S.[2] Detective Russell said that V.S. offered three different explanations of the victim's injury. V.S. initially told Detective Russell that the victim injured her hand by falling on a rock. When Detective Russell told V.S. that her siblings' explanations of the injury were inconsistent with her account, V.S. told Detective Russell that the victim accidentally burned her hand on a cigarette. Detective Russell then told V.S. that her sisters had not reported the injury being accidental. Detective Russell recalled that V.S. "finally told [him] what had

_____

[1]As is the practice of this court, we refer to the child victim in this case by her initials.

[2]V.S. is the defendant's older child from a previous marriage. V.S. was 13 years old at the time of the offense.

happened" and that she "dropped her head" and "talked a little more quietly" when she disclosed that her mother, the defendant, had intentionally burned the victim's hand with a cigarette.

Detective Russell interviewed the defendant, the defendant's husband, and Ethan Lambert, a family relative who lived in a camper in the family's backyard, later that day. He interviewed Darrell Jonas, the family's next-door neighbor, several days later. Photographs of a chain link fence and playground set taken by Detective Russell were admitted into evidence. Detective Russell said that Ms. Brooks took the children to Holston Valley Medical Center (HVMC) on December 4 to have the victim's hand "checked."

Doctor Kelly Chumbley, an emergency room physician at HVMC, examined the victim's hand on December 4. He determined that the wound was a circular burn that had occurred approximately three or four days before the examination. He said that the wound was consistent with a non-accidental cigarette burn based upon its location in the victim's palm and the absence of any pattern showing that the victim attempted to "pull away" from the cigarette. He described the wound as "absolutely" and "extremely" painful because there are so many pain receptors in the palm of one's hand. He conceded, however, that the wound was "easily treated with Neosporin and a [b]and [a]id" and showed no sign of infection. He also noted that the victim showed no other signs of sickness or physical abuse.

Doctor Chumbley recalled that he asked the victim how the injury occurred. He said that the victim "took an ink pen from the case worker, put it between her index and middle finger[s], put the pen to her mouth, said 'Mommy took the cigarette,' and . . . pushed [the pen] into the palm of her hand" to demonstrate how the defendant had burned her hand.

V.S. testified at trial that the victim "got burned" in the defendant's bedroom. She said that she saw the defendant burn the victim with the cigarette when the defendant became angry after repeatedly telling the victim to stop playing with the cigarette. V.S. admitted that she had given different statements concerning the cause of the victim's injury. She said that she was testifying truthfully at trial and that she had given different statements previously because she was afraid of getting hurt.[3]

Darrell Jonas, the defendant's next-door neighbor, recalled that the victim played with his son in his backyard on Saturday, December 1. At some point, the victim approached Mr. Jonas and showed him an injury to her palm. He described the wound as a "horseshoe cut" with skin "peeled back." Assuming that she had hurt herself on the fence

---

[3]V.S. did not testify before the jury regarding the source of her fear. In a hearing outside the presence of the jury, she indicated, however, that she was afraid of her step-father, the victim's father.

or playground in the yard, he placed a band aid on the wound. Mr. Jonas admitted that he did not see the injury occur and that it could have occurred before the victim came into his yard to play.

Doctor Gregory Pastrick, a plastic surgeon, examined the victim's hand on December 27 in preparation for juvenile court proceedings concerning the victim's injury. He observed a one-inch healed wound on the victim's left palm. He recalled that the injury was healing and required no further treatment. He also determined that there was no significant scarring that would require any treatment by him. Doctor Pastrick did not receive any information concerning the cause of the injury. Based upon his examination on December 27, he determined that there was no way to ascertain the cause of the victim's injury.

The defendant testified that she first saw the injury to the victim's hand on the morning of Sunday, December 2. She treated the wound with Neosporin and a band aid. The defendant denied burning the victim.

Based upon this evidence, the jury convicted the defendant as indicted. At sentencing, the trial court entered judgments of convictions sentencing the defendant to 20 years' incarceration as a Range I offender to be served at 100 percent for each count of aggravated child abuse and to 20 years' incarceration as a Range I, standard offender for each count of aggravated child neglect. The judgments, however, reflect that the trial court later concluded that each count alleged an alternative theory of the same offense and merged counts two, three, and four into count one. The defendant timely filed a motion for new trial which was denied by the trial court on April 9, 2009.

On May 20, 2009, the defendant filed a petition for a writ of error coram nobis alleging that V.S. had admitted during an unrelated juvenile court proceeding that she had testified falsely at trial concerning how the victim had injured her hand. As exhibits to their pleadings, the parties presented transcripts of the parental termination hearings in juvenile court wherein V.S. made various inconsistent statements concerning the abuse suffered by both the victim and herself. On December 18, 2009, following the presentation of evidence and arguments of counsel, the trial court denied the defendant's request for coram nobis relief.

On appeal, the defendant contends that the evidence is insufficient to sustain her convictions because (1) the evidence failed to show that the defendant caused the victim's injury, (2) there is insufficient proof that the defendant committed an act of neglect, (3) there is insufficient proof that the victim suffered serious bodily injury, and (4) there is insufficient proof that the defendant used a deadly weapon to commit the offenses. The

defendant also contends that the trial court erroneously excluded the testimony of a forensic interviewer with the Sullivan County Children's Advocacy Center who would have testified that the victim reported that Ethan Lambert burned her hand. The defendant contends that the 20-year sentence imposed by the trial court is excessive and that the trial court erred in denying her petition for writ of error coram nobis.

The State argues that the evidence is sufficient to support the convictions and that the trial court correctly excluded the testimony of the forensic interviewer absent the victim's being called as a witness and properly impeached with the inconsistent statement. The State also contends that the sentence should be affirmed and that the trial court properly denied the petition for writ of error coram nobis.

*I. Sufficiency of the Evidence*

We review the defendant's claim attacking the sufficiency of the evidence to support her convictions mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia,* 443 U.S. 307, 324 (1979); *State v. Winters,* 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters,* 137 S.W.3d at 654.

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters,* 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id*.

The offense of child abuse is committed when a person "knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury," T.C.A. § 39-15-401(a) (2006), and the offense of child neglect is committed when a person "knowingly abuses or neglects a child under eighteen (18) years of age [] so as to adversely affect the child's health and welfare," *id*. § 39-15-401(b). The offenses of aggravated child abuse and aggravated child neglect, as pertinent to this case, are committed when (1) "[t]he act of abuse or neglect results in serious bodily injury to the child," *id*. § 39-15-402(a)(1), or (2) "[a] deadly weapon . . . is used to accomplish the act of abuse [or]

neglect," *id.*, § 39-15-402(a)(3). When the victim is a child "eight (8) years of age or less" the offense is a Class A felony. *Id*. § 39-15-402(b).

*A. Identity of the Defendant as the Perpetrator*

Initially, the defendant contends that the State failed to present sufficient proof to establish that she was the person who burned the victim's hand. She notes that the victim did not testify at trial. Additionally, she argues that V.S. was the only witness who identified her as the person who burned the victim and that "[d]ue to [V.S.]'s many lies and inconsistencies, she could not be considered a reliable and credible witness." The defendant contends that V.S. made numerous inconsistent statements, including that the victim injured her hand accidentally when she grabbed a rusty pole; she argues that this explanation was consistent with the medical testimony presented at trial. Therefore, she asserts, the evidence is insufficient to establish that she committed any act upon the victim.

Ms. Bishop, the victim's teacher, testified that the victim showed her a dime-size, circular wound. Doctor Chumbley testified that his examination of the victim's hand within days of the injury determined that the victim had suffered a cigarette burn to her hand. Significantly, he recalled the victim's description of how the injury occurred and her statement that her "Mommy" had burned her. V.S. testified at trial that the defendant, angered by the victim's ignoring her admonitions not to play with the cigarette, burned the victim's palm with the cigarette. V.S. was cross-examined regarding her prior inconsistent statements. The jury chose to accredit the proof presented by the State. We conclude that the proof sufficiently established the defendant injured the victim.

*B. Neglect (Counts Three and Four)*

The defendant argues that there is insufficient proof to establish that she committed aggravated child neglect. She contends that "[n]o evidence was introduced to show that [her] actions or inactions after the injury occurred affected [the victim]'s health and welfare." The defendant notes that the evidence established that she treated the victim's wound with Neosporin and a band-aid and that the victim suffered no additional harm or injury from the initial act of abuse. The State fails to address this aspect of the defendant's attack on the sufficiency of the evidence, only arguing that the evidence is sufficient to support the conviction of aggravated child abuse.

"[B]efore a conviction for child neglect may be sustained, the State must show that the defendant's neglect produced an actual, deleterious effect or harm upon the child's health and welfare." *State v. Mateyko*, 53 S.W.3d 666, 671-72 (Tenn. 2001). In applying this principle to instances where a defendant is convicted of both aggravated child abuse and

aggravated child neglect, this court has held that there must exist some evidence that the alleged act of neglect resulted in serious bodily injury in addition to and apart from the serious bodily injury caused by the initial act of abuse. *State v. Marcos Acosta Raymundo, a.k.a. Marcus Raymundo Acosta*, No. M2009-00726-CCA-R3-CD, slip op. at 18 (Tenn. Crim. App., Nashville, Nov. 10, 2010) (holding evidence of aggravated child neglect was insufficient because proof did not show that alleged act of neglect – defendant's delay in seeking medical attention – had any harmful effect on the victim's health); *State v. John Barlow*, No. W2008-01128-CCA-R3-CD, slip op. at 15 (Tenn. Crim. App., Jackson, Apr. 26, 2010) (holding insufficient evidence to support aggravated child neglect conviction where evidence showed that initial act of abuse caused serious bodily injury – not delay in seeking medical attention), *perm. app. denied* (Tenn. Sep. 24, 2010); *State v. Denise Wiggins*, No. W2006-01516-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Jackson, Nov. 2, 2007) (holding insufficient proof presented to establish that act of neglect resulted in serious bodily injury).

The evidence presented in this case showed that the initial act of abuse occurred when the defendant burned the victim's palm with a cigarette. The wound was treated with Neosporin and a band-aid, a treatment advocated by Doctor Chumbley for such an injury. The evidence showed no need to seek further medical treatment. Within days of the injury, Doctor Chumbley examined the wound as part of the DCS investigation and determined that there was no sign of infection and that the wound had been treated appropriately. Within a month, Doctor Pastrick evaluated the injury and determined that it was healing and required no further medical treatment. The record is devoid of any evidence that the victim suffered further harm or injury subsequent to the initial abuse. Indeed, the State did not allege either in the indictment or through argument at trial that the victim had suffered any additional harmful effects. Consequently, we conclude that there is insufficient evidence to support the defendant's convictions of aggravated child neglect in counts three and four of the indictment. We reverse these judgments of conviction, vacate the verdicts, and direct the trial court to dismiss counts three and four on remand.

*C. Serious Bodily Injury (Count One)*

Next, the defendant contends that the State failed to present sufficient proof to establish that the abuse suffered by the victim constituted serious bodily injury. "Serious bodily injury" is defined as injury involving: "(A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental

faculty ." T.C.A. § 39-11-106(34).[4]

We have previously held that second degree burns constitute serious bodily injury to support a conviction of aggravated child abuse. *State v. Jason Scott Lomax and Ophelia Lomax*, No. W2008-01615-CCA-R3-CD, slip op. at 13 (Tenn. Crim. App., Jackson, Oct. 21, 2009) (concluding defendant's burning victim's feet with a straightening iron caused extreme physical pain to support aggravated child abuse causing serious bodily injury), *perm. app. denied* (Tenn. Apr. 23, 2010); *State v. Kevin Jones*, No. W2001-01381-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Jackson, Jan. 2, 2003) (concluding defendant's forcing two-year-old victim to remain in bathtub filled with scalding water, leading to second and third degree burns to victim's legs and buttocks, supported conviction of aggravated child abuse causing serious bodily injury), *perm. app. denied* (Tenn. May 19, 2003). In *State v. Kathy Martin and Marcus Carlos West*, No. 03C01-9411-CR-00420 (Tenn. Crim. App., Knoxville, Apr. 23, 1996), this court affirmed the aggravated child abuse conviction stemming from West's burning the thirteen-month-old victim with a cigarette lighter on her face and hands. *Id.*, slip op. at 8. Medical experts testified that the second degree burns suffered by the victim in *Kathy Martin* would have caused extreme physical pain, although such burns are usually successfully treated with burn ointment. *Id*.

Except for the number of burns to the victim, we find the facts of *Kathy Martin* strikingly similar to the facts of this case. The evidence in this case showed that the defendant pressed a lit cigarette into the victim's hand. V.S. testified that the victim cried when the defendant burned the victim. Two days after the injury, the victim's teacher, Ms. Bishop, observed a circular wound on the victim's palm. Doctor Chumbley examined the victim's wound within three days of its occurrence and opined that the wound would have been "extremely painful" because of its location in the victim's palm. Like the medical experts in *Kathy Martin*, Doctor Chumbley acknowledged that he rarely treated burns such as the one suffered by the victim because such burns are easily treated with Neosporin and band-aids. Nevertheless, the evidence showed that the victim suffered extreme physical pain when the defendant burned her palm with the cigarette. Accordingly, we conclude that the evidence is sufficient to support the conviction of aggravated child abuse charged in count one of the indictment.

### D. Deadly Weapon (Count Two)

The defendant also claims that the State failed to prove that the offense was

---

[4]We note that subsequent amendments to the aggravated child abuse statute provide a definition of serious bodily injury specific to the offense. This definition includes "second- or third-degree burns" as one of the many examples of serious bodily injury applicable to the statute. T.C.A. § 39-15-402(d) (2009).

accomplished with a deadly weapon. A "deadly weapon" is defined in the Code as follows: "(A) A firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or (B) Anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." T.C.A. § 39-11-106(5)(A), (B). We have already concluded that the evidence sufficiently showed that the defendant's act of burning her daughter's hand with a lit cigarette produced serious bodily injury as evidenced by the extreme physical pain suffered by the victim. By definition, then, the evidence sufficiently established that the defendant accomplished the act with a deadly weapon; the lit cigarette, by its use, caused serious bodily injury. Accordingly, we conclude that the evidence is sufficient to support the defendant's conviction of aggravated child abuse charged in count two of the indictment.

## II. Victim's Prior Inconsistent Statement

The defendant complains that the trial court erred by excluding the testimony of Amy Witt Bockman, an investigator with the Children's Advocacy Center of Sullivan County, concerning a statement that the victim made identifying another individual as the person who burned her hand. She argues that the exclusion of Ms. Bockman's testimony denied her the right to present a defense. The State argues that because the victim was not a witness at trial, the trial court properly excluded evidence of the prior inconsistent statement pursuant to Tennessee Rule of Evidence 613. The State also asserts that the evidence was not critical to the presentation of the defense because "it lacked probative value" and would have added little to the defense theory that someone other than the defendant committed the offense when considered in light of the presented proof that the victim injured her hand playing or by other means.

In this case, the defendant sought to impeach the victim's identification of the defendant as her abuser, which was communicated to Doctor Chumbley in the course of the doctor's providing medical care, *see* Tenn. R. Evid. 803(4), and testified to by Doctor Chumbley at trial, by presenting the testimony of Ms. Bockman that the victim had told her that the victim's uncle, Ethan Lambert, inflicted the burn. In an offer of proof, Ms. Bockman testified that she interviewed the victim on January 30, 2008, in conjunction with the children's second removal from the defendant's home following an allegation by V.S. that the victim's father sexually abused V.S.. She recalled that the victim told her that "Uncle Ethan" had burned her. The trial court ruled inadmissible the extrinsic evidence of the statement made to Ms. Bockman, absent the defendant's questioning the victim and affording her an opportunity to explain or deny the statement. *See* Tenn. R. Evid. 613(b).

"A witness's prior inconsistent statement may be used to impeach the witness." *State v. Philpott*, 882 S.W.2d 394, 406 (Tenn. Crim. App. 1994). Tennessee Rule of

Evidence 613(b) further provides that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless and until the witness is afforded an opportunity to explain or deny the same." Rule 613, however, refers to the impeachment of a trial witness via his or her own prior inconsistent statement. In the context of the impeachment of a hearsay declarant, however, as opposed to a witness, Rule 806 provides

> When a hearsay statement has been admitted in evidence, the credibility of the declarant may be attacked and, if attacked, may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant be afforded an opportunity to deny or explain.

Tenn. R.Evid. 806. As the Advisory Commission Comments to this rule note, "[t]his rule makes clear that hearsay declarants are subject to impeachment to the same extent as trial witnesses" are via Rule 613, but the hearsay declarant need not be given an opportunity to explain or deny the statement when impeached by a prior inconsistent statement. Tenn. R. Evid. 806, Advisory Comm'n Comments.

The victim did not testify in this case. The hearsay statement of the victim made to Doctor Chumbley in which she identified the defendant as the person who inflicted the cigarette burn to her hand was admissible as an exception to the rule against hearsay because the statement was made in the course of medical diagnosis and treatment of her injuries. *See* Tenn. R. Evid. 803(4). Once admitted, the credibility of the victim-declarant was then subject to attack through the use of any inconsistent statement made by the victim-declarant regardless of the victim-declarant's having an opportunity to deny or explain the inconsistent statement. *See* Tenn. R. Evid. 806. The offered inconsistent statement need not itself satisfy the terms of a hearsay exception. Because it is offered as impeachment evidence, it is not offered to show the truth of the matter asserted and, therefore, is not hearsay. *Cf. State v. Howell*, 868 S.W.2d 238, 252 (Tenn. 1993).[5] As such, the trial court erred by excluding the victim's statement made to Ms. Bockman identifying someone other than the defendant as the person who inflicted the burn to her hand.

Having concluded that the trial court erred by excluding the victim's inconsistent statement, we must now determine the effect of this error. In *State v. Rodriguez*,

---

[5]Likewise, the party against whom the impeachment evidence is offered would be entitled to a jury instruction limiting the use of the evidence to only impeachment.

-10-

254 S.W.3d 361 (Tenn. 2008), our supreme court "recognized three categories of error – structural constitutional error, non-structural constitutional error, and non-constitutional error." *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008). As noted by this court, "[n]on-constitutional errors identified by our supreme court include most evidentiary rulings." *State v. Bowman*, 327 S.W.3d 69, 91 (Tenn. Crim. App. 2009) (citing *State v. Powers*, 101 S.W.3d 383, 397 (Tenn. 2003)). That being said, this court also noted that "[t]he [United States] Supreme Court has held that a trial court's 'constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to . . . harmless error analysis.'" *Bowman*, 327 S.W.3d at 91 (citing *Delaware v. Van Arsdall*, 476 U.S. 673, 684 (1983)).

Applying the rationale of *Van Arsdall*, this court held in *Bowman* that the erroneous exclusion of impeachment evidence of a hearsay-declarant under Rule 806 is a "non-structural constitutional error" subject to harmless error analysis. *Bowman*, 327 S.W.3d at 92. As such, "the [S]tate must prove beyond a reasonable doubt that the error did not contribute to the defendant's conviction" in order to prevail on appeal. *Id.* Factors to be considered in this analysis include "the importance of the witness' testimony . . . , whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony . . . , and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684; *see also State v. Sayles*, 49 S.W.2d 275, 280 (Tenn. 2001).

At trial, the defendant denied inflicting the burn to the victim's hand. The only evidence of the identification of the defendant as the perpetrator made by the victim was her statement to Doctor Chumbley. The victim's sister testified that she saw the defendant inflict the cigarette burn to the victim's hand. The victim's sister's testimony, however, was inconsistent and equivocal concerning her actual witnessing the events or presence in the room when the burn occurred. Although the defendant thoroughly cross-examined the victim's sister concerning these inconsistencies, the trial court's exclusion of the victim's inconsistent statement prevented the defendant from impeaching the victim specifically. The hearsay statement made to Doctor Chumbley stood as the only unchallenged identification of the defendant as the perpetrator in this case. We, therefore, conclude that the State has failed to prove beyond a reasonable doubt that the trial court's erroneous exclusion of impeachment evidence did not contribute to the verdict. Accordingly, the judgments of conviction of aggravated assault are reversed, and the case is remanded for a new trial on counts one and two.

*III. Sentencing*

The defendant challenges the trial court's imposition of a sentence of 20 years'

incarceration as excessive. The State contends that the 20 year sentence is supported by the record. Although we have concluded that the trial court committed reversible error by excluding impeachment evidence, we shall address the defendant's remaining sentencing challenges in order to facilitate further appellate review.

When considering challenges to the length of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing decision, the trial court must consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5). Furthermore, the weight afforded an enhancement or mitigating factor is within in the discretion of the trial court and the application of a certain factor, if otherwise legally appropriate, "is not grounds for reversal under the revised Sentencing Act." *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). "An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in an manner consistent with the purposes and principles" of the Sentencing Act. *Id.* at 346.

Mary Lawson, the victim's foster mother, testified at the March 27, 2009 sentencing hearing that the victim and her siblings were placed in her home from December 7, 2007 until January 4, 2008, when they returned to their parents' custody. Following additional juvenile court proceedings, the children were returned to Ms. Lawson's care in July 2008. Ms. Lawson said that the victim suffered from severe developmental delays and, although she was eight years old at the time of her placement in Ms. Lawson's home, testing placed the victim at a developmental age of 5.9 years. Ms. Lawson testified that the victim was anemic when she was first placed in her care. She described the victim as "very petite." She also reported that the victim's demeanor had changed significantly since living with her and that the victim was now "very settled."

Jan Brownly, a therapist with the Sullivan County Children's Advocacy Center, testified that she began treating the victim in November 2008. She reported that the victim's behavior was now calmer and less aggressive due to the therapeutic efforts to counter the effects of the abuse the victim had suffered.

The trial court considered the defendant's admitted use of marijuana, as evidenced in the presentence report, as proof of criminal behavior to enhance the length of the defendant's sentence. *See* T.C.A. §40-35-114(1). The trial court also found that the victim was particularly vulnerable due to her mental disability. *See id.* § 40-35-114(4). In consideration of the aggravated child abuse causing serious bodily injury count, the trial court found that the defendant employed a deadly weapon in the commission of the offense. *See id.* § 40-35-114(9). The trial court also found that the defendant abused a position of trust in committing the offense. *See id.* § 40-35-114(14).[6] The trial court, however, found no

_____

[6]The trial court declined application of three other factors proposed by the State: (2)(leader in the
(continued...)

-13-

applicable mitigating factors in determining the defendant's sentence. Based upon these findings, the trial court imposed a sentence of 20 years' incarceration in each count. The court later merged the convictions into a single conviction of aggravated child abuse causing serious bodily injury as charged in count one of the indictment.

The record reveals that the trial court gave consideration to the principles and purposes of our sentencing act in arriving at the defendant's sentence. The trial court's findings concerning enhancement and mitigating factors are, likewise, supported by the record. Accordingly, we conclude that the trial court's imposition of a 20-year sentence was proper.

*IV. Petition for Writ of Coram Nobis Relief*

The defendant argues that the trial court erred by denying her petition for a writ of error coram nobis. She alleges that V.S. testified falsely at trial based upon her testimony during juvenile court hearings wherein she denied that the defendant had burned the victim. The State argues that the trial court correctly denied the petition because the evidence of V.S.'s inconsistent statements was known at trial and V.S. was thoroughly cross-examined concerning her inconsistent statements. In consequence, the State argues that the evidence of inconsistent testimony is not newly discovered and, therefore, does not warrant coram nobis relief. Following our review, we agree with the State.

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999).

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

T.C.A. § 40-26-105(b); *see State v. Vasques*, 221 S.W.3d 514, 525 (Tenn. 2007). Our supreme court has established the procedure for considering a coram nobis claim:

---

[6](...continued)
commission of the offense), (5)(exceptional cruelty), and (6)(particularly great injury). *See* T.C.A. § 40-35-114(2), (5), and (6).

-14-

> [I]n a coram nobis proceeding, the trial judge must first consider
> the newly discovered evidence and be "reasonably well
> satisfied" with its veracity. If the defendant is "without fault" in
> the sense that the exercise of reasonable diligence would not
> have led to a timely discovery of the new information, the trial
> judge must then consider both the evidence at trial and that
> offered at the coram nobis proceeding in order to determine
> whether the new evidence may have led to a different result.
> [The court then determines] "whether a reasonable basis exists
> for concluding that had the evidence been presented at trial, the
> result of the proceedings might have been different."

*Vasques,* 221 S.W.3d at 527. To be successful on a petition for a writ of error coram nobis, "the standard to be applied is whether the new evidence, if presented to the jury, may have resulted in a different outcome." *Id*. at 526. The decision to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the trial court. T.C.A. § 40-26-105; *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995).

As exhibits to the coram nobis hearing, the parties presented the transcripts of juvenile court hearings that occurred both before and after the February 2009 trial. At a January 4, 2008 juvenile court hearing, V.S. denied telling Detective Russell just weeks earlier that her mother had burned the victim with a cigarette. She testified that she instead told Detective Russell that the victim injured herself on a pole while playing outside in the neighbor's yard. During the January 2008 hearing, V.S. admitted, however, that she had told Ms. Brooks that the defendant burned the victim with the cigarette. V.S. offered no explanation at the January 2008 hearing for her inconsistent testimony.

At an April 16, 2009 hearing in juvenile court concerning the termination of both the defendant and her husband's parental rights, V.S., while responding to questioning by her step-father's attorney, testified that she did not see the defendant burn the victim with the cigarette. When questioned by the DCS attorney, however, she stated that the defendant burned the victim with a cigarette, that the victim was crying and said her hand hurt, and that V.S. saw a "big red circle" on the victim's hand.[7]

---

[7]At the conclusion of the April 2009 juvenile court hearing, the juvenile court found the defendant guilty of severe child abuse based upon her convictions in criminal court. The juvenile court also found the defendant's husband guilty of sexually abusing V.S., which was the subject of much of the April 2009 hearing. The parental rights of both parents were then terminated.

At the coram nobis hearing, the trial court stated that it had reviewed all of the transcripts from juvenile court hearings and the trial. Additionally, the trial court listened to tape recordings of the April 2009 juvenile court hearing. Based upon this review, the trial court characterized the step-father's attorney's questioning of V.S. at the April 2009 hearing as "kind of disturbing." The trial court noted that the attorney repeatedly blamed V.S. for the defendant's 20-year sentence and told her that her parents loved her. The trial court stated that the nature of the questioning made him very skeptical of V.S.'s responses. The trial court also noted that V.S. ultimately testified during the same hearing that her mother had burned the victim.

In ruling on the petition for a writ of error coram nobis, the trial court found that everyone knew prior to trial "that [V.S.] had testified . . . basically [that] her mother had not . . . burned her sister." The court further described the case as

> one of those situations where we had a trial. The State as well as the defense were aware of the fact that she had . . . testified at a hearing that it was not her mother [who] did it, everybody was aware of that fact, she was asked about that on the witness stand. . . . I found her at the trial to be a credible witness.

The trial court also found that Doctor Chumbley's testimony corroborated V.S.'s testimony concerning how the burn had occurred. The court denied the petition because the defendant was aware of the inconsistent statements and had cross-examined V.S. regarding the statements at trial. The court also based the denial upon its finding that the April 2009 hearing produced no new credible evidence that would have changed the outcome of the trial. We agree with the findings of the trial court and conclude that the trial court did not abuse its discretion by denying the defendant's petition for a writ of error coram nobis.

CONCLUSION

Having concluded that there is insufficient evidence to support the convictions of aggravated child neglect, we reverse those convictions and dismiss those charges. We further conclude that the trial court erroneously excluded evidence of the victim's inconsistent statement that was admissible pursuant to Rule 806 and that the State failed to prove beyond a reasonable doubt that the trial court's error did not contribute to the verdict. In consequence, the remaining convictions of aggravated child abuse in counts one and two are reversed, and those counts are remanded for a new trial. The judgment of the trial court denying the petition for a writ of error coram nobis is, however, affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE