# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs May 1, 2012 at Jackson

## STATE OF TENNESSEE V. JOSE L. HIDALGO

**Appeal from the Criminal Court for Davidson County**
**No. 2009-C-2224    Cheryl A. Blackburn, Judge**

---

**No. M2011-01314-CCA-R3-CD - Filed March 26, 2013**

---

The Defendant, Jose L. Hidalgo, was convicted by a Davidson County jury of four counts of sexual battery by an authority figure, one count of aggravated rape, one count of aggravated child abuse, and one count of aggravated child neglect. Thereafter, the aggravated child neglect conviction was merged with the aggravated child abuse conviction. The Defendant received sentences of four years for each count of sexual battery by an authority figure, twenty years for the aggravated rape conviction, and ten years for the aggravated child abuse conviction. The trial court ordered each of the four-year sentences to run concurrently with one another but consecutive to the remaining sentences of twenty and ten years, which were likewise to be served consecutively, resulting in a total effective sentence of thirty-four years. On appeal, the Defendant raises the following issues for our review: (1) whether the trial court erred by allowing the victim's mother to testify in rebuttal as to when the victim reported the sexual abuse to her; (2) whether the evidence was sufficient to support his aggravated child neglect conviction; and (3) whether partial consecutive sentences were appropriate. Following our review, we affirm the jury's verdicts of guilt for each offense and the imposition of consecutive sentencing. However, we remand for entry of corrected judgment of conviction forms to properly reflect the counts as numbered in the amended indictment and the merger of the aggravated child neglect conviction into the aggravated child abuse conviction. The judgments are affirmed in part and vacated in part, and this case is remanded to the trial court for further proceedings in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court**
**Affirmed in Part; Vacated in Part; Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

C. Dawn Deaner, District Public Defender; and Melissa Harrison (at trial), Mary Kathryn Harcombe (at trial), and Jeffrey A. DeVasher (on appeal), Assistant Public Defenders, for the appellant, Jose L. Hidalgo.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; Kristen E. Menke and Katrin N. Miller, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

On July 24, 2009, the Defendant was charged with nine counts of aggravated sexual battery, four counts of sexual battery by an authority figure, and one count of each of the following: attempted sexual battery by an authority figure, aggravated rape, attempted aggravated rape, aggravated child abuse, and aggravated child neglect. All counts involved abuse of his biological, minor daughter, A.H,[1] during a time period of March 5, 2007, through March 30, 2009. Prior to trial, the State amended the indictment dismissing five counts of aggravated sexual battery, the attempted sexual battery by an authority figure, and the attempted aggravated rape count. The remaining eleven counts were renumbered accordingly.

Trial was held March 28 through 31, 2011. At the conclusion of its case-in-chief, the State voluntarily dismissed the four counts of aggravated sexual battery; thus, the following seven offenses remained for the jury's consideration: four counts of sexual battery by an authority figure, one count of aggravated rape, one count of aggravated child abuse, and one count of aggravated child neglect. Also, the State made the necessary election of offenses following the conclusion of its proof.

The Defendant does not argue that the evidence was insufficient to support any of his convictions, except the aggravated child neglect conviction. Therefore, we will briefly summarize the evidence presented at trial. Regarding the four counts of sexual battery by an authority figure, the evidence at trial revealed the following facts. Count 1 concerned an event that, according to the victim, happened one month after her siblings came from El Salvador to live with her and the Defendant in Nashville. The victim stated that this was when the Defendant first "began to touch [her]"; she was thirteen years old at that time. That evening, the Defendant lay down in bed with the victim and her sister. The victim testified that the Defendant fondled her breasts and vagina on the outside of her clothes with his hand. According to the victim, she tried to stop the Defendant from touching her, but he kicked her

---

[1] It is the policy of this court to refer to rape victims by their initials.

-2-

out of the bed and told her "that if [she] wasn't going to do what he wanted to do that [she] had to lay down on the carpet on the floor."

Count 2 related to a separate occasion where the Defendant fondled the victim's vagina over her clothes. This happened while the Defendant was sleeping in the victim's bed. According to the victim, she saw the sheet moving and believed the Defendant was touching his penis.

On yet another occasion, while in the victim's bed, the Defendant forced the victim to touch his penis with her hand. She testified that she would try to "take [her] hand away." This testimony correlated with Count 3 of the indictment. The victim testified that this actually happened twice.

The last count of sexual battery by an authority figure, Count 7, also happened in the victim's bedroom and was on her fifteenth birthday. This time the Defendant used his hand to fondle her breasts and vagina over the outside of her clothing. According to the victim, the Defendant did not go to work that day, and he kept her and her siblings home from school that day. The victim testified that she told the Defendant she wanted to go to school because she had a test but that he said the only reason she wanted to go to school was "so that everybody will be hugging [her] there."

The aggravated rape in Count 8 occurred at approximately 4:00 a.m. on March 24, 2009. The victim testified that the Defendant used a knife to enter her locked bedroom while she was sleeping. She awoke to the Defendant punching her in the stomach and then the nose; her nose started to bleed. He restrained her by holding her arms over her head and pulled down her panties. The Defendant then penetrated her vagina with his penis, which the victim said hurt. Her brother heard her crying and came to check on her. She went to the bathroom to try to get the blood off of her, but the Defendant "came back again" and kept hitting her. According to the victim, her brother pulled the Defendant off of her in an effort to stop the beating, and they retreated to her brother's room. The Defendant then went and took her from her brother's room. The Defendant tried to kiss her, but she said no, so the Defendant hit her in the mouth. Shortly thereafter, the victim phoned the authorities and reported the abuse.

Counts 10 and 11, the aggravated child abuse and aggravated child neglect charges, covered the same events. According to the victim, the Defendant repeatedly struck her in various rooms of the house throughout the day on March 23 and into the early morning hours of March 24, 2009, prior to the rape. He did so after the victim had returned home from school, and he had learned that she had a boyfriend. He punched and kicked her repeatedly, and used belts, a coat hanger, a broom handle, and jumper cables to commit the beating. He

also tried to strangle her while she was cooking him breakfast. These blows resulted in bruising and swelling all over her body, a bloody nose, and petechiae under her right eye consistent with strangulation. The victim testified that the injuries were extremely painful, that it hurt to sit down, and that some of the bruises took from six months to a year to heal.

In addition to the victim's testimony, the State also presented the testimony of the victim's brother, the physician who examined the victim at the hospital, and three detectives who investigated the allegations. The detectives responded to the scene and collected evidence. The Defendant also made a statement to the detectives.

The Defendant's motion for judgment of acquittal on the remaining counts was denied, and he testified in his own defense. He denied ever sexually abusing the victim but admitted to the physical abuse. The Defendant claimed the beating resulted from the victim being in trouble at school and her association with her gang-member boyfriend. He also relayed that he was beaten as child. Thereafter, the State called the victim's mother to testify in rebuttal.

Based upon the foregoing evidence, the jury found the Defendant guilty as charged on the remaining seven counts of the indictment. At the outset of the sentencing hearing held on May 4, 2011, the trial court merged the Defendant's convictions for aggravated child abuse and aggravated child neglect. The trial court imposed four-year sentences at 30% for each of the sexual battery by an authority figure convictions, a twenty-year sentence at 100% for the aggravated rape conviction, and a ten-year sentence at 100% for the aggravated child abuse conviction. Because the aggravated child neglect conviction was merged, no separate sentence was imposed on that count. The trial court ordered the counts of sexual battery by an authority figure to be served concurrently with each other but consecutively to the aggravated rape count and the aggravated child abuse count, which were likewise consecutive, resulting in a total effective sentence of thirty-four years in the Department of Correction. This appeal followed.

## ANALYSIS

On appeal, the Defendant raises the following issues for our review: (1) whether the trial court erred by allowing the victim's mother to testify in rebuttal as to when the victim reported the sexual abuse to her; (2) whether the evidence was sufficient to support the Defendant's aggravated child neglect conviction; and (3) whether partial consecutive sentences were appropriate. We address each in turn.

-4-

*I. Victim's Mother's Testimony*

The Defendant contends that the trial court erred by allowing the State to call the victim's mother "to testify in rebuttal that the victim told her that the Defendant had sexually abused her." Specifically, the Defendant argues that

> the trial court erred in allowing [the victim's] mother to testify that [the victim] told her that the [D]efendant had sexually abused her. He submits that the statements were not admissible as prior consistent statements because the defense did not introduce any pretrial statements by [the victim] that were inconsistent with her trial testimony regarding her disclosure of sexual abuse, did not cross-examine [the victim] about whether she had fabricated her allegations, and did not ask [the victim] whether she had testified untruthfully on direct examination. Alternatively, even if the testimony at issue constituted a prior consistent statement, the trial court erred in failing to issue a limiting instruction cautioning the jury not to consider the evidence substantively.

The State responds that "[t]he trial court, however, properly allowed the victim's mother to testify that her daughter reported sexual abuse to her within a week of it taking place after the [D]efendant insinuated that the victim waited much longer to report it." According to the State, the victim's mother's testimony "was not hearsay and was admissible as relevant evidence to rebut the [D]efendant's insinuations that the timing of the victim's claim indicated fabrication." Moreover, the State notes that the Defendant never requested a limiting instruction at trial and that none was necessary because the victim's mother did not "relay the actual statement to the jury[.]"

"Rebuttal evidence is 'any competent evidence which explains or is in direct reply to or a contradiction of material evidence introduced by the accused.'" State v. Thompson, 43 S.W.3d 516, 524 (Tenn. Crim. App. 2000) (quoting Nease v. State, 592 S.W.2d 327, 331 (Tenn. Crim. App. 1979)). "Whether [evidence] is rebuttal [evidence] is not determined by the order in which [it is presented]. This determination is based upon the content of the evidence offered." State v. West, 825 S.W.2d 695, 698 (Tenn. Crim. App. 1992). "The rationale behind [the rule] is '[s]ince the [S]tate does not and cannot know what evidence the defense will use until it is presented at trial, the [S]tate is given the right of rebuttal.'" State v. Cyrus Deville Wilson, No. 01C01-9408-CR-00266, 1995 WL 676398, at *4 (Tenn. Crim. App. Nov. 15, 1995) (quoting State v. Williams, 445 So.2d 1171, 1181 (La. 1984)). The issue of whether to allow rebuttal testimony, as well as the scope of that testimony, lies within the sound discretion of the trial court. State v. Reid, 213 S.W.3d 792, 831 (Tenn. 2006) (citing Thompson, 43 S.W.3d at 524 (Tenn. Crim. App. 2000)). The court's ruling on this issue will not be overturned absent a clear abuse of discretion. Id. (citing State v. Kendricks, 947 S.W.2d 875, 884 (Tenn. Crim. App. 1996)). Trial courts may properly permit

the State to introduce testimony in rebuttal which should have been introduced in their proof in chief. <u>Johnson v. State</u>, 469 S.W.2d 529, 530 (Tenn. Crim App. 1971) (citations omitted).

On direct examination, the victim testified that the first time she told anyone about the sexual abuse was two days after the incident. At that time, she told her mother, who had come from Guatemala to take the victim and her brother back there to live. The victim recalled that she also told this information to a social worker named "Jamilla" around this same time. According to the victim, she returned with her mother to Guatemala approximately twenty days later. The victim acknowledged that she did not tell hospital personnel about the sexual abuse when she was being examined on March 24, 2009. According to the victim, she had no "idea what was going to happen" following her hospital examination, and she did not "trust anybody either."

On cross-examination of the victim, the following colloquy about who the victim told and when occurred:

Q. Isn't it true that a social worker at the hospital asked you if you had been sexually abused by your father and you said no?

A. I don't recall if she asked me, but I didn't tell anybody about that.

Q. In fact, you waited almost a month after your father was arrested before you told anyone, isn't that correct?

A. No.

Q. You told your mother. Is she the -- she's the first person you told, right?

A. Yes.

Q. And didn't you tell her on the day before you went back to Guatemala?

A. No.

Q. Isn't it true that you told others -- you didn't tell anyone else besides your mother until the day before you left for Guatemala, isn't that true?

A. No.

Q. When did you tell your mother?

A. When she came from Guatemala.

Q. And you and your mother discussed it, isn't that right?

A. Yes.

Q. And it was after you discussed it with your mother that you reported the sexual abuse to the police, isn't that right?

A. I told Jamilla, and she was the one who said it.

Q. Okay. And that was after you had discussed this with your mother?

A. Yes.

Q. And you waited until your mother came from Guatemala before you told anyone that your father had sexually abused you, isn't that correct?

A. Yes.

As stated previously, the Defendant testified on his own behalf, and while he admitted that he physically abused the victim, he denied any sexual abuse. During the Defendant's opening argument, defense counsel noted that the victim gave several statements following the events of March 23 and 24, 2009. Defense counsel further argued:

> She told them all the same thing. She told them this hasn't happened before, my dad went crazy and beat me. DCS became involved with the children. Everyone said the same thing. . . . After [the victim's mother] arrived in the United States, [the victim's] story changed. For almost a month she told the authorities he beat me this one time, he lost it and he beat me. Then the night before she was to go back to Guatemala [the victim] and her mother exacted their revenge. Now she says he touched me, he sexually abused me, he raped me, he beat me all the time.

On cross-examination of the Defendant, the State inquired about what would be the victim's and her mother's possible motive for revenge. The following exchange took place:

> Q. When this trial started, you said that [the victim] and her mother . . . made this up, correct? Why would they make that up?

A.  For revenge maybe, you know, since I'm not living with [the victim's mother].  A long time ago she got another husband, she got not [sic] any good feelings for me.  She got another kid with the other guy.  It's completely separate.  She doesn't know good feelings for me, and that's it.

Q. Okay.  So why would she want -- for what would she want revenge against you?

A.  Because I beat the baby.  I beat the girl.  I beat my daughter.  That's why she's mad at me and she has revenge for me.

. . . .

Q.  And is your testimony that [the victim] is making this up to get back at you for the beating?

A.  At one point -- at one point I think she -- she still mad at me.  And like I say, I don't know when -- I don't know when she's going to forgive me.  And I don't blame her.  I did something wrong.  It never should happen [sic].

It should be noted that the Defendant continued in this vein during closing argument, "What happened is that [the victim] discussed this with her mother, and then she went home to Guatemala."

The State called the victim's mother as a rebuttal witness.  During her testimony, the State asked the victim's mother about the timing of the victim's allegations.  The defense objected on hearsay grounds.  At the jury-out hearing that followed, the trial court first noted that, on cross-examination of the victim, defense counsel "asked the question, didn't you wait a month before you told anyone.  And she said no. . . . So if she told her mother short of that month, that's admissible."  Defense counsel contended that there was no prior inconsistent statement, to which the trial court responded, "No, but you were trying to imply to the jury that she waited a month.  And she said no.  So that's perfectly -- that would be a consistent statement . . . that comes in."  The trial court explained, "Prior consistent statements come in when you have implied that there was a motive to lie.  So if a statement is consistent prior to your alleged motive to lie, then that would come in as a prior consistent statement."  Defense counsel argued that the victim's motive to lie arose at the time of the beating, to which the State replied by recounting defense counsel's opening statement.  The trial court clarified when the victim's alleged motive to lie arose:

THE COURT: So the prior consistent statement would be prior to the testimony at trial for which the motive to lie is to get back at him?

[PROSECUTOR]: Correct.

. . . .

THE COURT: Well, I mean, [what the defense is] saying [is] that the motive for her to lie now, that is, she's lying on the witness stand, is to -- is revenge for what he did. And the point of the matter is that if she disclosed in a consistent manner before this motive arose. But the point being is you asked the question implying to the jury that she didn't tell anybody for a whole month. The State now has a right to point out that she, in fact, told this witness as soon as she got here.

. . . .

THE COURT: Well, no, that's not what you've implied to the jury about her mother and -- and that she and her mother concocted this and that the motive was because he took the kids and all that.

The trial court ruled that the State could inquire about when the victim reported the sexual abuse to her mother, but the victim's mother was not allowed to recite the details of the victim's allegations on that occasion.

Ordinarily, prior consistent statements of a witness are not admissible to bolster the witness's credibility. State v. Braggs, 604 S.W.2d 883, 885 (Tenn. Crim. App. 1980).

[P]rior consistent statements may be admissible, as an exception to the rule against hearsay, to rehabilitate a witness when insinuations of recent fabrication have been made, or when deliberate falsehood has been implied. But before prior consistent statements become admissible, the witness' testimony must have been assailed or seriously questioned to the extent that the witness' credibility needs shoring up.

State v. Benton, 759 S.W.2d 427, 433-34 (Tenn. Crim. App. 1988) (footnote omitted). "A prior consistent statement admitted to rehabilitate the witness is not hearsay because it is not offered 'to prove the truth of the matter asserted in the statement.'" See State v. Fredrick Arnaz Miller, No. E2005-01583-CCA-R3-CD, 2006 WL 2633211, at *11 (Tenn. Crim. App.

Sept. 14, 2006) (quoting Neil P. Cohen et al., Tennessee Law of Evidence § 8.01[9] (5th ed.2005)), perm. app. denied, (Tenn. Jan. 29, 2007).

The Defendant argues that the trial court erred by allowing the victim's mother to testify about when the victim first reported the sexual abuse because he did not impeach the victim's testimony to the extent that it needed rehabilitating. We disagree. Through cross-examination of the victim, defense counsel called into question when the victim initially reported her allegations of sexual abuse to her mother, implying that the victim did not tell her mother until the day before they left for Guatemala, not immediately upon her mother's arrival, as the victim testified to on direct examination. Also, the Defendant, on cross-examination, insinuated that the victim and her mother fabricated the sexual abuse allegations as a mode of revenge for the beating. In our view, the defense attacked the victim's credibility, implying that she had fabricated the allegations and was testifying in accordance with the revenge plan that she concocted with her mother. The State was able to rehabilitate the victim's credibility by asking the victim's mother if the victim told her about the sexual abuse just following her arrival in the United States. The defense opened the door to the victim's mother's testimony regarding the timing of statements made to her by the victim as a prior consistent statement corroborating the victim's testimony. Thus, the trial court did not abuse its discretion by permitting the victim's mother to so testify on rebuttal. See e.g., State v. Livingston, 907 S.W.2d 392, 398 (Tenn. 1995) (after victim's credibility was attacked by inquiring whether she had told a different story to mother and aunt, victim's cousin's testimony about what victim told her about sexual encounters with defendant was admissible for corroboration as prior consistent statement); State v. Martin Dean Gibbs, No. M2011-00740-CCA-R3-CD, 2012 WL 2402674, at *12 (Tenn. Crim. App. June 27, 2012) (victim's credibility needed rehabilitating, after defense implied that victim had fabricated the allegations and was testifying as her mother had instructed), perm. app. denied, (Oct. 17, 2012).

The Defendant also contends that the trial court should have instructed the jury that it could not consider the evidence substantively. However, the Defendant has waived the issue because he failed to request such an instruction. See Tenn. R. Evid. 105; Gibbs, 2012 WL 2402674, at *12; State v. Joseph Shaw, Jr., No. W2009-02326-CCA-R3-CD, 2010 WL 3384988, at *7 (Tenn. Crim. App. Aug. 27, 2010), perm. app. denied, (Tenn. Jan. 13, 2011).

## II. Sufficiency of the Evidence

The Defendant challenges the sufficiency of the convicting evidence solely with respect to his conviction for attempted aggravated child neglect. Specifically, he contends that "the record is clear that A.H. did not sustain any serious bodily injury in addition to and apart from the serious bodily injury caused by the [D]efendant's acts of abuse, for which he was convicted of aggravated child abuse[.]" He continues:

-10-

Although the trial court ordered that the [D]efendant's conviction for aggravated child neglect be merged into his conviction for aggravated child abuse, a separate judgment was entered on the aggravated child neglect conviction. The [D]efendant notes that this [c]ourt has held that to effect merger, the proper procedure is to merge the finding of guilt of the multiple subject offenses into a single judgment of conviction. See, e.g., State v. Cecret C. Williams, No. M2009-01739-CCA-R3-CD, 2010 WL 4674300[,] at *9 (Tenn. Crim. App. at Nashville, Nov. 17, 2010). Moreover, because the evidence is legally insufficient to support the [D]efendant's conviction for aggravated child neglect, the trial court should have dismissed, rather than merged, that charge.

The Defendant requests that we reverse and dismiss his aggravated child neglect conviction.

The State responds that the Defendant's sufficiency argument is "challenging a conviction that no longer exists as the trial court merged [the conviction for aggravated child neglect] into his conviction for aggravated child abuse." According to the State, "[t]he trial court, however, failed to memorialize properly the merger of these convictions through the entry of a single judgment of conviction for aggravated child abuse. Thus, the State does not object to the entry of a single judgment to reflect properly this merger."

Although the convictions for aggravated child abuse and aggravated child neglect merged, the Defendant can still challenge the sufficiency of the evidence supporting the merged conviction. See, e.g., State v. Jonathan Freeman, No. W2011-02497-CCA-R3-CD, 2012 WL 5928359, at *3-4 (Tenn. Crim. App. Nov. 27, 2012) (conducting sufficiency review of defendant's convictions for possession of more than one-half ounce of marijuana with intent to sell and possession of more than one-half ounce of marijuana with intent to deliver, which were merged into one judgment of conviction); State v. Adam Clyde Braseel, No. M2009-00839-CCA-R3-CD, 2010 WL 3609247, at *8 (Tenn. Crim. App. Sept. 17, 2010) (addressing the sufficiency of the defendant's "merged" conviction for felony murder in the event of further review), perm. app. denied, (Tenn. Feb. 17, 2011). Accordingly, we begin by addressing the Defendant's challenge to the sufficiency of the evidence.

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571

-11-

S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Our supreme court recently clarified that circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011). In doing so, the supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 380 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)) (quotation marks omitted). Instead, "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. The reason for this is because with both direct and circumstantial evidence, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference[, . . . and i]f the jury is convinced beyond a reasonable doubt, we can require no more." Id. at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)). To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in [a d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

To place this issue in the proper context, we will address both of the Defendant's convictions for both aggravated child abuse and aggravated child neglect. The Defendant was indicted in Count 10 for aggravated child abuse as follows: "[The Defendant] on or about the 23rd day of March 2009, . . . did knowingly, other than by accidental means, treat [the victim], a child under eighteen (18) years of age in such a manner as to inflict injury, and the act of abuse resulted in serious bodily injury to the child, in violation of Tennessee Code Annotated § 39-15-402[.]" Count 11, charging aggravated child neglect, provided as follows: "[The Defendant] on a date between March 23, 2009 and March 24, 2009, . . . knowingly did neglect [the victim], a child under eighteen (18) years of age so as to adversely affect the child's health and welfare, and the act of neglect resulted in serious bodily injury to the child, in violation of Tennessee Code Annotated § 39-15-402[.]"

Based upon the indictment in the present case,

[a] person commits the offense of aggravated child abuse or aggravated child neglect or endangerment, who commits the offense of child abuse, as defined

-12-

in § 39-15-401(a), or who commits the offense of child neglect or endangerment, as defined in § 39-15-401(b), and:

  (1) The act of abuse or neglect results in serious bodily injury to the child;

  (2) The act of neglect or endangerment results in serious bodily injury to the child[.]

Tenn. Code Ann. § 39-15-402(a)(1) (2006). "Child abuse" is committed by "[a]ny person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury[.]" Tenn. Code Ann. § 39-15-401(a) (2006). "Child neglect or endangerment" is committed by "[a]ny person who knowingly abuses or neglects a child under eighteen (18) years of age, so as to adversely affect the child's health and welfare." Tenn. Code Ann. § 39-15-401(b).

The State submitted the following as its election of offenses for these two counts:

  Count 10 of the indictment alleges an act of aggravated child abuse against [the victim], and refers to the following conduct. On March 23, 2009, and March 24, 2009, the [D]efendant repeatedly struck [the victim] using his fists, two belts and belt buckles, a coat hanger, and a broom handle. The [D]efendant also kicked the victim with his feet and strangled the victim with his hands. This occurred in various different rooms in the house where the victim and the [D]efendant lived . . . . These repeated blows to the body of [the victim] resulted in bruising to the sides and rear of both her left and right leg, bruising and swelling on her left and right arm, a bruise on her stomach, a swollen and bloodied nose as well as bruising on the left side of her neck and petechiae under her right eye consistent with strangulation. The victim testified that the injuries were painful, that it hurt to sit down, that some of these bruises took from six months to one year to heal and that these bruises caused her pain until they healed.

  Dr. Matthew Locklair testified that in his expert opinion the victim's injuries were severe bruising resulting from non-accidental trauma. Dr. Locklair further testified that the medical records reflected ten out of ten for pain experienced, indicating the most severe pain ever experienced by the patient. The facts in support of this count are separate and distinct for those in support of Count 8.

  Count 11 of the indictment alleges an act of aggravated child neglect against [the victim], and refers to the following conduct. On March 23, 2009,

-13-

and March 24, 2009, the [D]efendant repeatedly struck [the victim] using his fists, two belts and belt buckles, a coat hanger, and a broom handle. The [D]efendant also kicked the victim with his feet and strangled the victim with his hands. This occurred in various different rooms in the house where the victim and the [D]efendant lived . . . . These repeated blows to the body of [the victim] resulted in bruising to the sides and rear of both her left and right leg, bruising and swelling on her left and right arm, a bruise on her stomach, a swollen and bloodied nose as well as bruising on the left side of her neck and petechiae under her right eye consistent with strangulation. The victim testified that the injuries were painful, that it hurt to sit down, that some of these bruises took from six months to one year to heal and that these bruises caused her pain until they healed.

Dr. Matthew Locklair testified that in his expert opinion the victim's injuries were severe bruising resulting from non-accidental trauma. Dr. Locklair further testified that the medical records reflected ten out of ten for pain experienced, indicating the most severe pain ever experienced by the patient. The facts in support of this count are separate and distinct for those in support of Count 8.

The election clearly demonstrates that the State was proceeding with alternate charges for the same conduct, i.e., treating a child "in a manner as to inflict injury" or abusing or neglecting a child "so as to adversely affect the child's health and welfare."

We allow the State to initially proceed in this alternative fashion. See, e.g., State v. Cecret C. Williams, No. M2009-01739-CCA-R3-CD, 2010 WL 4674300, at *9 (Tenn. Crim. App. Nov. 17, 2010); State v. Blake Delaney Tallant, No. E2006-02273-CCA-R3-CD, 2008 WL 115818, at *24 (Tenn. Crim. App. Jan. 14, 2008); see also State v. Henretta, 325 S.W.3d 112, 117 (Tenn. 2010). When verdicts of guilty are returned on both counts, we avoid violating principles of double jeopardy by merging the verdicts into one judgment of conviction. See State v. Cribbs, 967 S.W.2d 773, 787-88 (Tenn. 1998); see also Williams, 2010 WL 4674300, at *9; Tallant, No. E2006-02273-CCA-R3-CD, 2008 WL 115818, at *24.

The evidence, including the Defendant's own admission, clearly established that the Defendant acted knowingly, other than by accidental means, when he repeatedly beat his fifteen-year-old daughter with belts and a coat hanger, causing serious bodily injury. Accordingly, the evidence showed that the Defendant committed aggravated child abuse as charged in Count 10, and neither party disputes this conclusion.

Turning to Count 11, Tennessee Code Annotated section 39-15-401(b), in separating the proscription of child neglect by adverse-affect from child abuse by injury contained in subsection (a), refers to "abuse[] or neglect[]" as alternative bases for "adversely affect[ing] the child's health and welfare." (Emphasis added). Although prior legislative intent was to define child abuse and child neglect as distinct alternatives,[2] the statute at issue in this case defines child neglect as including abuse. The evidence in the light most favorable to the State reflects that the Defendant abused the victim by beating her, that his actions had an adverse effect on her health and welfare, and that she suffered bodily injury. Following this logic,[3] we conclude that the evidence is sufficient to support the aggravated child neglect conviction.

We see no reason why the merger rule of Cribbs would not apply with equal force here, and neither party disputes that the convictions should merge to avoid violating principles of double jeopardy. Pursuant to Cribbs, the verdicts or findings of guilty may stand, subject to the requirement of merging the verdicts into one conviction. The trial court in this case found that the convictions should merge but entered separate judgment forms for both convictions. The judgment form for aggravated child neglect simply reflects the jury's finding of guilt, no separate sentence is imposed, and its merger with the aggravated child abuse conviction is notated therein. However, this court has stated that the proper practice is to enter only one judgment form with a notation therein that the alternative count is merged. See Williams, 2010 WL 4674300, at *9 (citing State v. Zachary V. Henning, No. W2005-00269-CCA-R3-CD, 2007 WL 570553, at *4 (Tenn. Crim. App. Feb. 23, 2007) ("On remand, the trial court should vacate the judgments of conviction of aggravated assault, including the sentence, and of theft and amend the judgment of conviction of aggravated robbery to reflect the merger of both the findings of guilt of aggravated assault and theft.")); State v. Aquellis Quintez Tucker, No. W2007-02361-CCA-R3-CD, 2008 WL 4648365, at *9 (Tenn. Crim. App. Oct. 21, 2008) (entry of revised judgments ordered with notation

---

[2] Our supreme court has said that the 1998 amendment replaced the language of Tennessee Code Annotated section 39-15-402 in its entirety, with the purpose of distinguishing criminal conduct that caused injury to a child from criminal conduct that adversely affected a child's health and welfare by creating two distinct offenses, child abuse and child neglect. See State v. Dorantes, 331 S.W.3d 370, 385 n.15 (Tenn. 2011). Previously, child abuse and neglect had been a single offense that was committed by the alternate modes of injury or neglect. See State v. Mateyko, 53 S.W.3d 666, 668 n.1 (Tenn. 2001).

[3] We note that the jury instructions for aggravated child neglect omit the option that the neglect may be committed by "abuse." The instruction was proper for offenses committed under an earlier version of the child neglect statute. See generally T.P.I.—Crim. 21.02(a). In this regard, the jury's finding of aggravated child neglect was error under the instruction given because the State did not prove beyond a reasonable doubt that the Defendant neglected the victim. However, the jury's verdict of guilt for aggravated child abuse supplied the necessary action by the Defendant that adversely affected the victim's health and welfare. Thus, the error was harmless beyond a reasonable doubt.

-15-

therein that the verdict of guilt as to the other count is merged). The State concedes that the merger is not properly reflected in the judgment forms. Accordingly, we vacate the judgment of conviction form for aggravated child neglect and remand for entry of a corrected judgment for aggravated child abuse, i.e, one judgment reflecting the merger, the surviving aggravated child abuse conviction and a notation on that judgment form of the merger of the aggravated child neglect verdict.

At this juncture, we also note that the count numbers on the judgment forms are those from the original indictment, not from the amended indictment and as submitted to the jury. Upon remand, the trial court should correct all of the remaining judgment forms to reflect the appropriate count numbers as listed in the amended indictment.

### III. Sentencing

The Defendant challenges only the imposition of consecutive sentencing. Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). To facilitate appellate review, "it is critical that trial courts adhere to the statutory requirement set forth in Tennessee Code Annotated section 40-35-210(e)" and articulate in the record its reasons for imposing the specific sentence. See State v. Bise, 380 S.W.3d 682, 705 n.41 (Tenn. 2012).

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
(2) The defendant is an offender whose record of criminal activity is extensive;
(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

-16-

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. However, the imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" Tenn. Code Ann. § 40-35-103(2) & (4).

Here, the Defendant was convicted of five offenses that involve sexual abuse of a minor as a statutory element: four counts of sexual battery by an authority figure and one count of aggravated rape. The trial court ordered consecutive service of the Defendant's convictions for sexual battery by an authority figure, aggravated rape conviction, and aggravated child abuse. The trial court imposed consecutive sentences on the basis that the Defendant was convicted of two or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances, the time span of the activity, the nature and scope of the acts, and the extent of damage to the victim.

Initially, the Defendant maintains that section 40-35-115(b)(5) did not authorize consecutive alignment of the aggravated child abuse, a non-sexual offense, with the other offenses involving sexual abuse of a minor. He does not, however, support his argument that this section is so limited with citation to any relevant authority. Under these circumstances, we will not disturb the ruling of the trial court. See State v. Wayne C. Burkhart, Jr., No. E2010-00717-CCA-R3-CD, 2011 WL 1833289, at *18 (Tenn. Crim. App. May 11, 2011) (citing State v. Lane, 3 S.W.3d 456, 458 (Tenn. 1999) (approving consecutive alignment of convictions of unlawful exercise of official power and rape on the basis of Code section 40-35-115(b)(5)), perm. app. denied, (Tenn. July 29, 2011).

Next, the Defendant argues that the aggravating circumstances of section 40-35-115(b)(5) are not present here. Additionally, the Defendant submits that the aggregate sentence of thirty-four years is greater than that deserved for the offenses committed and is not the least severe measure necessary to achieve the principles of the Sentencing Act; he notes that he is required to serve 100% of his sentences for aggravated rape and aggravated child abuse. See Tenn. Code Ann. § 40-35-501(i)(2)(F) & (K). The State replies that the trial court properly considered all of the aggravating factors relative to the multiple offenses involving sexual abuse of a minor. We agree with the State.

The record supports the trial court's conclusion that criterion (5) applied to Defendant's case. The relationship between the Defendant and the victim cannot be contested. The victim was the Defendant's biological daughter, and he was her sole caregiver. Regarding the time span of the activity, the Defendant submits that, "[a]s to the offense of aggravated rape, there was no time span of undetected sexual activity because the [D]efendant was arrested on the same date the offense allegedly occurred[.]" The Defendant again does not support his argument that the time span of the activity is offense specific. The multiple counts of the indictment in this case alleged sexual abuse occurring over a two-year period, from March 2007 to March 2009. The victim testified that the sexual abuse started when she was just thirteen years old, and it did not end until two years later when the Defendant was arrested following her rape. Our supreme court and this court have approved of consecutive sentencing in cases with far less of a time span. See, e.g., Lane, 3 S.W.3d at 460 (Tenn. 1999) (among the circumstances that justified imposition of consecutive sentences was the fact that defendant engaged in the "egregious conduct" for over a month); State v. Richard L. Meyer, No. 01 C01-9902-CC00034, 1999 WL 994046, at *2 (Tenn. Crim. App. Nov. 3, 1999) (in finding that defendant clearly qualified for consecutive sentencing, court noted that abuse of victim lasted for several months and included digital penetration).

The trial court also reviewed the nature and the scope of the acts of sexual abuse and the extent of damage to the victim, finding as follows: "Clearly this was an extraordinary beating because [the Defendant] got angry. Apparently he thought his daughter . . . had a boyfriend. And then he raped her after he beat her, and the injuries were pretty substantial." The sexual nature of this relationship began with inappropriate touching of the victim in March 2007, continuing until her rape on March 24, 2009. Our state courts have attempted to delineate the severity of sexual abuse that will warrant application of consecutive sentencing. See State v. Osborne, 251 S.W.3d 1, 28 (Tenn. Crim. App. 2007) (concluding that evidence of sexual acts including cunnilingus, fellatio, digital penetration, and masturbation was sufficient to support imposition of consecutive sentencing); but cf. State v. Cleander Cleon Hartman, Jr., No. M2000-02441-CCA-R3-CD, 2002 WL 65996, at *17-18 (Tenn. Crim. App. Jan. 17, 2002) (consecutive sentencing not warranted where contact was limited to touching and fondling, never escalated, and did not involve penetration or oral

contact). While the Defendant correctly observes that 100% service of sentences for aggravated child abuse and aggravated rape cannot be ignored, we conclude that the abuse the victim suffered in this case is of the more severe nature as described in Osborne and warrants imposition of at least partial consecutive sentences. See also State v. Henry Floyd Sanders, No. M2011-00962-CCA-R3-CD, 2012 WL 4841545, at *16 (Tenn. Crim. App. Oct. 9, 2012), perm. app. filed, (Tenn. Dec. 4, 2012).

Finally, the Defendant argues that the State did not prove residual, physical and mental damage to the victim. We disagree. The pre-sentence report, introduced as an exhibit at the sentencing hearing, included the victim's statement that she was seeing a psychologist and a description of her physical and emotional suffering. "Based on our review of the record, a combination of concurrent and consecutive sentences is appropriate in relation to the severity of the offenses and are the least severe measures necessary to deter [the] Defendant's future criminal conduct, to protect society, and to deter others who are similarly situated and may be likely to commit similar offenses." Osborne, 251 S.W.3d at 28-29.

The presence of a single factor is enough to justify the imposition of consecutive sentencing. Under these facts and circumstances, partial consecutive sentencing is an appropriate and justly deserved sanction. We affirm the sentence as imposed by the trial court and conclude that it is no greater than that deserved for the offenses committed.

CONCLUSION

Based upon the foregoing reasoning and authorities, we affirm the jury's verdicts of guilt and the imposition of consecutive sentencing. As indicated above, however, a remand is necessary for entry of a single judgment of conviction for aggravated child abuse and aggravated child neglect. The corrected judgment form for aggravated child abuse should memorialize the merger of the aggravated child neglect verdict, and the judgment form for aggravated child neglect is vacated. Also upon remand, the trial court should correct all of the remaining judgment forms to reflect the counts as numbered in the amended indictment and submitted to the jury. Accordingly, the judgments are affirmed in part and vacated in part, and this case is remanded to the trial court for further proceedings in accordance with this opinion.

_____
D. KELLY THOMAS, JR., JUDGE